UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ROSLYN GONZALEZ, individually and on behalf of all others similarly situated | § § § | |
| v. | § § | C.A. NO.:  _____ |
| BLUE CROSS AND BLUE SHIELD ASSOCIATION, HEALTH CARE SERVICE CORPORATION dba BLUE CROSS BLUE SHIELD OF TEXAS, and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT | § § § § § § § | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Roslyn Gonzalez, individually and on behalf of all others similarly situated, files this Original Class Action Complaint pursuant to Federal Rule of Civil Procedure 23 against Defendants Blue Cross Blue Shield of Texas, Blue Cross and Blue Shield Association (collectively referred to hereinafter as "BCBS"), and the United States Office of Personnel Management. It is a class action on behalf of participants and beneficiaries of the affected Plans who were denied proton beam radiation therapy ("PBT") because of BCBS's uniform application of an arbitrary medical policy to deny as experimental or investigational such treatment for cancer, despite PBT being recognized for decades by the medical community as an established, medically appropriate cancer treatment.

## I.    INTRODUCTION

1.    Ms. Gonzalez is yet another patient abused and mistreated by health care giant BCBS's unlawful and unconscionable conduct. She is not the first, and she will not be the last unless this Court holds BCBS accountable.

2.    BCBS intentionally broke their promises to provide insurance coverage for Ms. Gonzalez's radiation oncology treatment by inexcusably denying her the medically necessary PBT required to most effectively treat a 7.5 centimeter cancerous tumor in her abdomen. BCBS

1

denied Ms. Gonzalez *four separate times*, absurdly contending that PBT was "experimental and investigational." To the contrary, PBT is a widely-recognized and accepted form of cancer treatment, particularly in cases like Ms. Gonzalez's. In fact, Ms. Gonzalez's oncology team at the world-renowned MD Anderson Cancer Center ("MD Anderson") not only confirmed the same to BCBS, they also confirmed the medical necessity of PBT in Ms. Gonzalez's case by warning of the grave and potentially life-threatening danger to Ms. Gonzalez if she were to undergo an alternative form of cancer treatment such as intensity-modulated radiation therapy ("IMRT"). Further confounding BCBS's denial is the fact that MD Anderson is a contracted provider within the Blue Cross Blue Shield network.

3.     Moreover, BCBS imposed conditions upon Ms. Gonzalez in seeking approval of PBT treatment that were not contained in her Plan and which were simply a false pretense under which BCBS could employ its uniform practice and policy of denying PBT coverage to its insureds. Ms. Gonzalez purportedly failed to meet these unilaterally imposed conditions, and BCBS denied Ms. Gonzalez the life-saving PBT treatment she needed. Finally, and making matters worse, Defendants repeatedly advised Ms. Gonzalez that she had no appeal rights whatsoever in response to their denials.

4.     In other words, and contrary to popular and widely accepted medical opinions, Defendants unjustifiably denied Ms. Gonzalez the medically necessary treatment she needed and then tried to prevent her from seeking any reconsideration of those denials. This kind of despicable behavior cannot continue.

5.     Ms. Gonzalez is not alone, as BCBS employs this same unconscionable and uniform cost-saving policy of denying and delaying PBT coverage to its insureds, and forcing them to undergo suboptimal, and often life-threatening, alternative treatment such as IMRT.

6.     This case seeks to hold BCBS accountable for its unlawful, unconscionable, and immoral conduct as to Ms. Gonzalez and all those similarly wronged. BCBS is no stranger to mistreating its insureds, and this case gives voice to those who have been abused and wrongfully denied medically necessary, life-saving cancer treatment by BCBS.

## II.    JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331, as the claims asserted herein arise, in part, under the Federal Employees Health Benefits Act ("FEHBA") (5 U.S.C. §8901, *et seq.*) and the Administrative Procedure Act ("APA") (5 U.S.C. §702).

8.    Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in this Court as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b)(1) and (d).

## III.    PARTIES

10.    Ms. Gonzalez, a 43-year old female, is and was at all relevant times a resident of Plano, Texas, and a participant in the Blue Cross and Blue Shield Service Benefit Plan ("Plan"), administered by the Blue Cross and Blue Shield Association and Blue Cross Blue Shield of Texas. Ms. Gonzalez obtained coverage under the Plan through her former employment as an attorney with the United States Department of Homeland Security and Army Corps of Engineers.

11.    Defendant Blue Cross and Blue Shield Association ("BCBSA") is an Illinois corporation duly authorized to conduct business in the State of Texas and is a national association of 36 independent, community-based and locally operated Blue Cross Blue Shield companies, including BCBS Texas. It can be served at its headquarters at 225 North Michigan Avenue, Chicago, IL 60601, or wherever else it may be found.

12.    Defendant Blue Cross Blue Shield of Texas is a division of Defendant Health Care Service Corporation, which is a mutual legal reserve company and Illinois corporation duly authorized to conduct business in the State of Texas, and does conduct such business as  Blue Cross Blue Shield of Texas (collectively referred to herein as "BCBS Texas"). BCBS Texas is a licensee of BCBSA and is responsible for processing claims and providing customer service to

the Plan members in Texas. It can be served through its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

13.    Defendant United States Office of Personnel Management ("the OPM") is an agency of the Federal Government and serves as the chief human resources agency and personnel policy manager to the Federal Government. The Plan was formed by a contract between the OPM and BCBSA pursuant to FEHBA.

14.    Ms. Gonzalez is informed and believes that, at all relevant times, each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.

15.    Ms. Gonzalez is informed and believes that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability.  Ms. Gonzalez is further informed and believes that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another.  On information and belief, Ms. Gonzalez understands and believes that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.

IV.    **FACTUAL ALLEGATIONS**

    A.    **BCBS's Promise to Cover Radiation Oncology**

16.    As a federal employee, Ms. Gonzalez was provided insurance coverage for medically necessary healthcare services through the Blue Cross and Blue Shield Service Benefit Plan ("Plan"), which was administered by BCBSA and BCBS Texas pursuant to contract CS1039 with the OPM, as authorized by the Federal Employees Health Benefits Act (FEHBA), 5

U.S.C. §8901, *et seq.* A true and correct copy of Ms. Gonzalez's Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

17.     Pursuant to page 18 of the Plan, Ms. Gonzalez was required to use covered professional healthcare providers within the BCBS network, which included MD Anderson.

18.     Pages 22 through 28 of the Plan outline the pre-service claim approval process. The Plan describes a "pre-service claim" as "any claim, in whole or in part, that requires approval from us before you receive medical care or services." The Plan states: "If you do not obtain precertification, there may be a reduction or denial of benefits." *See*, Ex. A at p. 22.

19.     The Plan defines the categories of medical services for which pre-approval/precertification is required. It does ***not*** require pre-approval for PBT treatment, but does for IMRT treatment. *Id.* at p. 24.

20.     If a pre-approval request is denied, the appeals process is outlined on page 28 of the Plan, and in Section 8 of the Plan entitled "Disputed Claims Process." *Id.* at p. 28; pp. 144-146. Pursuant to the Plan, any appeal must be made to BCBS within six months of its initial denial, after which BCBS has 30 days to (1) approve the request for prior approval; (2) maintain its denial; or (3) request additional information. *Id.*

21.     The Plan also provides for an appeal to the OPM if the insured does not agree with BCBS's decision on appeal. *Id.* The OPM appeal process is detailed in Section 8 of the Plan. *Id.* at pp. 145-146.

22.     The Plan promises coverage for Ms. Gonzalez's cancer treatment on page 55, where it indicates coverage for outpatient "chemotherapy and radiation therapy" for the treatment of cancer. Again, there are no exclusions of PBT treatment in the Plan. The Plan also covers other forms of cancer treatment relevant to Ms. Gonzalez's case, such as the removal of tumors, cysts, and biopsy procedures.

### B.     Ms. Gonzalez's Cancer Diagnosis

23.     After a car crash in May 2019, Ms. Gonzalez had an MRI of her pelvis, which revealed a 3.9 cm right ovarian cyst. A repeat MRI of the pelvis on July 31, 2019, showed

resolution of the right ovarian cyst and also revealed a large 7.3 x 5.3 x 4.8 cm ovoid mass in the left lower abdomen, adjacent to the left psoas muscle and anterior margin of the left iliac muscle. A follow-up CT scan on August 8, 2019, confirmed a well-defined 7.5 cm left lower abdominal mass abutting the descending colon that was suspicious for malignancy. The mass was diagnosed as an atypical lipomatous tumor of the left retroperitoneum.

24.    On September 23, 2019, Ms. Gonzalez and her husband, an Assistant District Attorney for Navarro County Texas, met with Dr. Christopher Scally, a surgical oncologist at MD Anderson, to discuss treatment of Ms. Gonzalez's tumor. After consulting with radiation oncologists at MD Anderson, Dr. Scally confirmed that radiation was necessary before attempting to remove the tumor surgically.

25.    On October 1, 2019, Ms. Gonzalez met with Dr. Andrew Bishop and his oncological team at MD Anderson. Given the type, location and severity of Ms. Gonzalez's tumor, in addition to her extensive and complicated medical history, Dr. Bishop and MD Anderson recommended PBT and advised BCBS of the same. Ms. Gonzalez underwent radiation simulation mapping on October 1, 2019 and was scheduled to begin PBT on October 14, 2019.

### C.    Proton Beam Radiation Therapy

26.    PBT has been recognized for decades by the medical community as an established, medically appropriate treatment for cancer. It is widely accepted by physicians, government agencies, and insurers and other payors, including Medicare and Medicaid which, by statute, do not cover "investigational or experimental" services.

27.    PBT uses protons to deliver a curative radiation dose to a tumor, while reducing dose exposure to healthy tissues and organs. It results in fewer complications and side effects than traditional IMRT. With PBT, protons deposit their energy over a very small area called the "Bragg peak." The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor. Proton beams enable patients to tolerate higher doses of radiotherapy compared with the photon beams used for traditional IMRT. The proton beam used in PBT can be adjusted and formed to match the size

6

and shape of the cancerous tissue to be destroyed, while not killing healthy tissue beyond a pre-determined scope and depth. The cancer cell then begins to break itself down through a process known as apoptosis, or programmed cell death.

28.    The invention of PBT is credited to physicist Robert Wilson, who first described it theoretically in 1946. By the 1950's, some health care facilities were using PBT to treat certain types of cancers. The Food and Drug Administration ("FDA") approved PBT in 1988 for the treatment of cancer. The National Association for Proton Therapy, Alliance for Proton Therapy Access and other nationally-recognized medical organizations, and numerous meticulous peer-reviewed studies have validated the safety and effectiveness of PBT.

29.    Ms. Gonzalez's world-renowned treatment provider, MD Anderson, first used PBT treatment in 2008 and has since treated over 2,000 patients with PBT.

30.    In addition, many other respected cancer facilities and providers recommend and use PBT on a regular basis, including without limitation, the Texas Center for Proton Therapy, Mayo Clinic, Baptist Hospital's Miami Cancer Institute, Loma Linda University, University of Florida, University of Maryland, Northwestern University, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, and the New York Proton Center. The first hospital-based proton beam center in the United States was at the Loma Linda Medical Center, which began operation in 1990. In 2018, the University of Miami announced its intention to build a PBT center at its Sylvester Comprehensive Cancer Center.

31.    There is overwhelming evidence that PBT is safe, effective, and a generally accepted standard of medical practice for the treatment of cancer within the medical community; particularly cancers like Ms. Gonzalez's.

### D.    BCBS's PBT Guideline

32.    Regardless of medical necessity, BCBS has a uniform policy to deny participants and beneficiaries PBT treatment, and instead forces individuals to seek the suboptimal IMRT treatment or other suboptimal treatments. This is solely a result of BCBS seeking to save itself the cost of PBT treatment, putting its bottom line over the health and safety of its insureds.

33.     The claim denials are carried out pursuant to BCBS FEP Medical Policy Manual, Section 8.01.10 (Charged Particle (Proton or Helium Ion) Radiotherapy for Neoplastic Conditions) ("PBT Guideline"), which is an internal document to BCBS and not included in the 187 pages of the Plan sent to BCBS insureds like Ms. Gonzalez, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

34.     The BCBS PBT Guideline limits the medical necessity of PBT treatment to the treatment of uveal melanomas, skull-based tumors, and pediatric central nervous system tumors. *See*, PBT Guideline at p. 1. The PBT Guideline continues to identify PBT as "investigational" in treating (1) pediatric non-central nervous system tumors; (2) clinically localized prostate cancer; (3) non-small-cell lung cancer at any stage or for recurrence; and (4) tumors of the head and neck (other than skull-based chordoma or chondrosarcoma. *Id*. The PBT Guideline makes no reference whatsoever to the type of cancer Ms. Gonzalez suffers from (retroperitoneum liposarcoma).

35.     BCBS's PBT Guideline is based upon 2014 guidelines from the American College of Radiology and a 2016 consensus statement by the International Particle Therapy Co-operative group – both of which are outdated and no longer informative on the issue of the medical necessity of PBT treatment. *Id*. at p. 3.

36.     However, the PBT Guideline is also based upon the more recent guidelines and policies established by the National Comprehensive Cancer Network ("NCCN") and the American Society for Radiation Oncology ("ASTRO"), both of which actually support PBT treatment in cases such as Ms. Gonzalez's. In other words, BCBS's PBT Guideline contradicts itself and cites to authority which supports the medical necessity and use of PBT treatment for Ms. Gonzalez and others similarly situated. *Id*. at p. 4.

37.     Nonetheless, BCBS relied upon the PBT Guideline to deny Ms. Gonzalez her medically necessary PBT treatment. The PBT Guideline provides no recourse or appeal rights stemming from a denial made pursuant to the PBT Guideline – in fact the PBT Guideline is entirely silent on the issue of a claim denial pursuant to the guideline.

38.     BCBS's PBT Guideline is used to summarily and categorically deny or delay PBT treatment to BCBS insureds, and is intended to compel BCBS's insureds to cease their efforts to receive PBT treatment, despite being medically supported and recommended, and instead settle for alternative, sub-optimal, and cheaper forms of treatment, such as IMRT.

E.     **BCBS's Inexplicable Denial of Medically Necessary PBT as "Experimental or Investigational"**

39.     On October 1, 2019, Ms. Gonzalez's oncological team at MD Anderson determined that PBT was medically necessary in light of her diagnosis and the close proximity of the tumor to her spinal canal, nerves and reproductive organs. Given Ms. Gonzalez's clinical complexity and time sensitivity, the MD Anderson oncological team expressed to BCBS during the verification of benefits process that PBT needed to be administered immediately.

40.     Despite the Plan not requiring a pre-service claim for Ms. Gonzalez's PBT, BCBS required Ms. Gonzalez and MD Anderson to submit to an advance benefit determination ("ABD"). As set forth above, while the Plan explains in detail the process for a pre-service claim, and the appeal and grievance process in the event of a denial, the 187-page Plan document has absolutely no reference to an ABD process.  Nonetheless, BCBS required the October 1, 2019, ABD submission from Ms. Gonzalez.

41.     Just one day later, on October 2, 2019, BCBS denied Ms. Gonzalez and MD Anderson's ABD submission, contending that PBT is "investigational," which it defined as a treatment where "medical experts agree that there is no improvement in health outcomes when compared to other proven treatments, based on evidence in scientific medical journals." The denial letter also stated that the "guideline rules, used in making this decision, can be found in our [PBT Guideline]." The letter also informed Ms. Gonzalez that "[BCBS's] decision is not subject to the [OPM] appeal rights under the Disputed Claims Process," but did not explain why this was the case. A true and correct copy of BCBS's October 2, 2019, denial letter is attached hereto as **Exhibit C**.

F.    **The October 3, 2019 Appeal**

42.    Ms. Gonzalez's oncological team at MD Anderson submitted a six-page letter along with nearly 40 pages of supporting documentation in appeal of BCBS's denial of Ms. Gonzalez's PBT. The urgent, life-threatening, level-one appeal was authored by Dr. Andrew Bishop, Assistant Professor Department of Radiation Oncology at MD Anderson. Dr. Bishop opened his letter as follows:

> *I am appealing the denial on an expedited basis and request BCBS to overturn its denial of [PBT] for Ms. Gonzalez's life-threatening cancer diagnosis: atypical lipomatous tumor of the left retroperitoneum.*
>
> *[PBT] is medically necessary for Ms. Gonzalez's diagnosis given the close proximity to the spinal canal and nerves in the region. Moreover, [PBT] will deliver a conservative and effective dose high dose of radiation while preventing grade III and IV toxicities. In addition, NCCN and ASTRO model policies recommend PBT for Ms. Gonzalez's clinical scenario.*
>
> *Given the clinical complexity and time sensitivity, BCBS must approve this request for Ms. Gonzalez immediately without further delay.*

A true and correct copy of the October 3, 2019, Appeal is attached hereto as **Exhibit D**.

43.    Dr. Bishop also expressly requested "an expedited ***Specialty Match Reviewer*** by a ***board-certified radiation oncologist with proton beam clinical experience***" to review the October 3, 2019, Appeal. *See*, Ex. D at p. 1 (emph. in original).

44.    In response to BCBS's denial of Ms. Gonzalez's PBT treatment as "not medically necessary," Dr. Bishop points out BCBS's reliance upon incomplete and outdated policies in forming the PBT Guideline. *Id*. at p. 2. Dr. Bishop also establishes that PBT "is the only treatment that can safely treat [Ms. Gonzalez] and preserve her bone marrow, which is critical given the quantity of systemic therapy being used to control the disease." *Id*. at pp. 3-5. Dr. Bishop refers to both the NCCN Guideline and ASTRO Model Policy in support of the medical necessity of PBT treatment in Ms. Gonzalez's case.

45.    In response to BCBS's denial of Ms. Gonzalez's PBT treatment on the grounds that PBT is "experimental and investigational", Dr. Bishop stated:

> *[PBT] is no longer considered experimental or investigational. In fact, two governmental agencies and the two major United States cancer organizations*

10

> *do not agree with [BCBS's] belief that [PBT] is experimental and investigational. [PBT] received FDA clearance in 1988—over 25 years ago.*
>
> *MD Anderson treated its first [PBT] patient in 2008, and since approximately 2,000 patients, many with complex (sarcoma) malignancies have been treated with [PBT]. [PBT] is supported and recommended both by the [NCCN] guidelines an [sic] ASTRO's Model Policy which are* **included in the policy being used to deny care.**
>
> *To characterize [PBT] as experimental/investigational or unproven is a euphemism for denying the standard of care.*

*Id.* at pp. 4-5 (emph. in original).

46.    Dr. Bishop concluded the October 3, 2019, Appeal as follows:

> *1)    Ms. Gonzalez can only be safely treated with proton therapy to preserve essential bone marrow, which is critical given her compromised state due to systemic therapies.*
>
> *2)    The decision to deny the medical necessity is based on incomplete/outmoded medical policy.*
>
> *3)    The NCCN and ASTRO both support the use of proton therapy as standard of care for Ms. Gonzalez's indication and meets the inclusion criteria. These guidelines are considered the industry standard for treatment recommendations (and are included in the BCBS policy).*
>
> *4)    Proton beam therapy will prevent acute and chronic radiation induced side effects.*

*Id.* at p. 5.

**G.    BCBS Stubbornly Maintains Its Denial of PBT for Ms. Gonzalez**

47.    Just one day after Dr. Bishop submitted the appeal letter, BCBS maintained its denial of coverage for Ms. Gonzalez's PBT in a one-half page letter. A true and correct copy of the October 4, 2019, denial letter is attached hereto as **Exhibit E.** It is unreasonable to assume BCBS considered the October 3, 2019, Appeal in its entirety, if at all. Instead, its boilerplate denial letter was automatically produced and issued to Ms. Gonzalez in connection with BCBS's uniform policy of denying its insureds medically necessary PBT treatment.

48.    The October 4, 2019, denial letter indicates that Ms. Gonzalez's appeal was reviewed by "a physician board certified in *General Surgery* with an added expertise in Surgical Oncology." *See*, Ex. E at p. 1 (emph. added). Dr. Bishop expressly requested that Ms. Gonzalez's appeal be reviewed by "a ***board-certified radiation oncologist with proton beam***

*clinical experience.*" *See*, Ex. D at p. 1.

49.    BCBS's October 4, 2019, denial does not reference Dr. Bishop's specific request, nor does it explain why BCBS failed to have Ms. Gonzalez's appeal reviewed by a board-certified radiation oncologist with proton beam clinical experience.

50.    The October 4, 2019, denial also falsely purports that "the use of proton beam in sarcoma is experimental," despite the mound of evidence to the contrary presented in Ms. Gonzalez's October 3, 2019, Appeal. Even worse, and unlike a pre-service claim denial pursuant to the actual language of Ms. Gonzalez's Plan, BCBS advised Ms. Gonzalez that "[t]his advanced benefit decision is not subject to the disputed claims process," and that the OPM "appeal rights do not apply." *Id*.

51.    In other words, Ms. Gonzalez was denied medically necessary coverage for healthcare services that were specifically covered by her Plan, based upon an ABD process found nowhere in the 187-page plan *or* in BCBS's PBT Guideline itself. And worse, according to BCBS, Ms. Gonzalez had no appeal rights at all, despite those rights being specifically outlined in the Plan as to appeals to both BCBS and the OPM.

52.    The grave injustice suffered by Ms. Gonzalez and all those similarly situated is palpable. BCBS simply does not care about its insureds' life-threatening cancer diagnoses. It instead chooses to put profit over patients and cost-savings over the medically necessary care its insureds' need.

### H.    Yet another Absurd and Unjustified Denial

53.    Ms. Gonzalez was understandably devastated by BCBS's unfair and immoral treatment and its wrongful denial of coverage for her medically necessary PBT. As such, she turned to social media to express her sentiments.

54.    BCBS received notice of the social media posting and claimed to further review its denial of coverage. Yet, nothing changed – it was a hollow "reconsideration" in an attempt to save face.

55.     In a three-quarters of a page November 13, 2019, letter BCBS stood on its prior denials, and stated that PBT "would be considered experimental/investigational/unproven for the treatment of [Ms. Gonzalez's] condition" pursuant *still* to the outdated and incomplete PBT Guideline.

56.     Shockingly, BCBS's November 13, 2019, letter also stated the following in response to Ms. Gonzalez and Dr. Bishop's detailed October 4, 2019, appeal:

> *The additional documentation adds no significant new information to suggest that it is medically necessary to use [PBT] in this case. Standard of care would be [IMRT]. We will uphold the previous denial as [sic] services as Experimental or Investigational."*

Attached hereto as **Exhibit F** is a true and correct copy of the November 13, 2019, denial letter.

57.     Nowhere in the November 13, 2019, denial letter, nor anywhere in any correspondence issued by BCBS concerning Ms. Gonzalez's PBT treatment, is there a response specific to the evidence and expert opinions submitted by Dr. Bishop. All of BCBS's letters appear to be boilerplate, standard-issue denial letters – which fits into BCBS's uniform policy and procedure of denying patients medically necessary and life-saving cancer treatment.

58.     Perplexingly, the November 13, 2019, denial letter stated that "additional appeal rights have been exhausted," while all prior correspondence informed Ms. Gonzalez that she had no appeal rights to begin with.

59.     With this conduct, BCBS is telling Ms. Gonzalez and its similarly situated insureds that it will never, no matter what, cover the cost of medically necessary PBT treatment that they need, and that they can do nothing about it.

60.     Ms. Gonzalez did not have the financial resources to pay for the PBT. She was left in the position that most are faced with – no choice. BCBS deprived Ms. Gonzalez of the choice to pursue a treatment course involving PBT that her doctors recommended in order to prevent serious side effects from traditional IMRT radiation. She was left with the only option BCBS was willing to pay for and proceeded with a course of traditional IMRT radiation.

61.    Ms. Gonzalez's doctors recommended PBT in part because of the tumor's location near the iliac nerve.  IMRT they feared could cause nerve damage. Ms. Gonzalez now suffers nerve damage in her left leg, with periods of unremitting pain and other times with lack of sensation and strength.

62.    Ms. Gonzalez's doctors recommended PBT because of the tumor's location to her reproductive organs. Ms. Gonzalez is now experiencing the early onset of menopause and she is facing the reality that she will never bear children.

63.    While BCBS was busy denying coverage for Ms. Gonzalez's PBT in 2019, BCBS Texas was concluding a three-year pilot program that started in 2016 and concluded that evidence-based access to PBT (1) did not lead to overuse, (2) was not associated with significantly increased overall costs in the context of comprehensive medical care, and (3) facilitated timely patient care and clinical research while reducing administrative burden for stakeholders, all of which supported appropriate access to PBT for all covered lives.

64.    This pilot program was conducted in conjunction with the University of Texas System ("UTS"), a state government entity that oversees 14 institutions throughout the State of Texas -- eight academic and six health care, including the University of Texas MD Anderson Cancer Center -- and is responsible for providing health insurance for 100,000 employees throughout the state (nearly 200,000 covered lives) through a self-funded, self-insured, employer-sponsored health plan administered by BCBS Texas, much like Ms. Gonzalez's federal employee Plan.

65.    UTS learned that the health plan managed by BCBS Texas was limiting PBT access for employees and dependents. Meanwhile, the UTS Board of Regents had committed to PBT expansion by approving a second proton therapy center, with plans for two additional centers at other institutions. Furthermore, UTS urged the insurance industry, and BCBS Texas specifically, to adopt an insurance plan definition of "medical necessity" that falls within the standard of generally accepted health care practice, considering the following:  (1) views of state and national medical communities; (2) guidelines and practices of Medicare, Medicaid, and other

14

government-financed programs; and (3) peer-reviewed literature. UTS found that the BCBS Texas PBT policy and definition of medical necessity directly contradicted standards of care and recommendations with respect to PBT.

66.    UTS concluded that one of the major barriers of patient access to PBT is the prior authorization process, which is associated with high denial rates and treatment delays of several weeks. These are particularly grave negative effects for patients with cancer, for whom delayed or abandoned treatments result in poor outcomes that would have been entirely preventable if not for coverage issues. UTS noted that, although traditional Medicare coverage generally pays for PBT, plans administered by commercial payors have widely denied prior authorization for PBT, arguing cost and overuse as justifications for restrictive coverage policies that vary widely in their definitions of medical necessity.

67.    Recognizing these difficulties in patient access to PBT, UTS and MD Anderson engaged in a cooperative strategy to improve patient access while addressing payor concerns, collaborating with BCBS Texas to implement a PBT coverage pilot, ensuring timely and appropriate access to care while reducing administrative burden for stakeholders.

68.    During the successful three-year pilot project, 100% of UTS employees for whom PBT was recommended were afforded coverage by BCBS Texas for PBT. Neither BCBSA nor BCBS Texas voiced any concern about patient safety or that the patients were being subjected to "unnecessary" or "experimental" or "investigational" treatment. During those same three years, patients for whom PBT was recommended but who were not UTS employees, like Ms. Gonzalez, were denied coverage. BCBS cannot explain away this paradox.

## V.    UNITED STATES OFFICE OF PERSONNEL MANAGEMENT

69.    The OPM serves as the chief human resources agency and personnel policy manager to the Federal Government.

70.    The OPM's history begins with the civil service reform pioneer, President Theodore Roosevelt, in 1883 with the signing of the Civil Service Act that established the Civil Service Commission. The Commission was reorganized into three separate organizations in

1978: (1) the OPM; (2) the Merit Systems Protection Board; and (3) the Federal Labor Relations Authority. The OPM was deemed responsible for personnel management of the civil service of the Government.

71.     The OPM works primarily in the following categories: (1) Human Capital Management; (2) Benefits; and (3) Vetting. The claims asserted herein focus on the OPM's benefits services and its powers to enforce FEHBA.

## VI.     FEDERAL EMPLOYEES HEALTH BENEFITS ACT

72.     The Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §8901, *et seq.*, was enacted in 1959, during the Eisenhower administration, and has been regarded as a model for health insurance reform and for private and public insurance programs such as Medicare. At a congressional subcommittee hearing to debate proposed amendments to FEHBA in 1963, Jerome Keating, President of the National Association of Letter Carriers, testified that FEHBA was "one of the finest pieces of legislation that has been enacted by the Congress in behalf of government employees in the past few years."

73.     Currently, the Federal Employees Health Benefits Program (FEHBP) is the largest employer-sponsored group health insurance program in the world, covering over 9 million federal employees, retirees, former employees, family members and former spouses. The OPM contracts with health insurance carriers like BCBS to provide healthcare benefits to those enrolled in the plans. The plan documents prepared by the health insurance carriers are intended to be a complete statement of benefits available to the enrollees, including all benefits, conditions, limitations, and exclusions.

74.     Under FEHBA, the OPM is responsible for administration of the FEHBP. However, health insurance carriers like BCBS are responsible for adjudicating claims and providing health benefits for all enrollees and covered dependents. FEHBA gives the OPM authority to resolve disputed health insurance claims between a carrier and an enrollee or dependent.

75.     Pursuant to the authority under FEHBA, the OPM first contracted with BCBS in

1960 (CS1039). Section 2.2 of the contract requires BCBS to provide certain mandated benefits but gives BCBS authority to modify those benefits and to determine whether a service or supply is medically necessary or payable. Section 2.8 of the contract confers authority to BCBS to resolve claims made under the plan. Section 2.8 further requires a grievance and appeal process that allows the OPM to review disputed claim denials. Section 2.9 requires BCBS to establish a procedure for standardized claims filing and adjudication.

76.    FEHBA establishes a comprehensive program of health insurance for federal employees and provides for enrollees to challenge the denial of benefits in federal court by suing the OPM under the Administrative Procedure Act (APA), 5 U.S.C. § 702, for an order requiring the OPM to invoke its contractual right to direct the health insurance carrier to pay a claim. The APA further permits an aggrieved party to seek injunctive relief.

77.    William Breskin, Vice President of Government Programs for BCBS, testified before a congressional subcommittee in 2013 that BCBS had been administering FEHBP plans since FEHBA's enactment and extolled BCBS's pride in the millions of federal employees from whom it collects what he described as "affordable premiums," and to whom BCBS purportedly provides "high level of customer satisfaction."

78.    One of the purported "customer service" benefits touted by BCBS is its ABD process. In yet another document not found in Ms. Gonzalez's 187-page Plan, BCBS maintains an administrative policy that claims the ABD review process "is an expanded customer service function" for federal employees and dependents covered by the plan in cases of "high-dollar outpatient procedures." Unknown to enrollees and dependents, this internal administrative policy further provides that, "since [ABD] reviews are not a contractual requirement, OPM member appeal rights do not apply."

## VII.    MS. GONZALEZ'S CLAIMS

79.    Because Ms. Gonzalez was denied access to covered and medically necessary healthcare services – PBT – she seeks injunctive relief as against the OPM, directing the OPM to invoke its contractual right to direct BCBS to change its outdated PBT Guideline that fails to

17

comply with industry standards; to implement a new PBT Guideline that adheres to industry standards; and to re-adjudicate all ABD reviews of PBT requests, all pre-claim service requests for PBT, and all post-claim requests for reimbursement for PBT services.

80.    Ms. Gonzalez also pursues all available Texas state law remedies against BCBS to the extent FEHBA does not provide a civil enforcement mechanism that creates a federal cause of action that replaces and protects the same interests that Ms. Gonzalez's state law claims provide. These state law claims include, without limitation, claims for breach of contract, breach of the duty of good faith and fair dealing, violations of Texas Insurance Code, violations of the Texas Deceptive Trade Practices—Consumer Protection Act, and negligent misrepresentation.

## VIII.   CLASS ALLEGATIONS

81.    Ms. Gonzalez brings this action on behalf of herself and on behalf of all others similarly situated. Ms. Gonzalez seeks to certify and maintain this as a class action lawsuit pursuant to Rules 23(a) and (b)(1), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following proposed class:

### A.    Class Definition

82.    Ms. Gonzalez brings her claims on her own behalf and on behalf of a "Nationwide Class," defined as:

> *All participants or beneficiaries of health insurance plans administered by BCBS who were (1) denied pre-service or post-service claims for medically necessary PBT cancer treatment; (2) required to submit to the BCBS's ABD process in connection with seeking such PBT treatment; and (3) denied proper appeal rights. (the "Class Members")*

83.    Excluded from each class are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associate court staff assigned to this case.

84.    Ms. Gonzalez reserves the right to modify, expand, or amend the definitions of the proposed Nationwide Class following the discovery period and before the Court determines whether class certification is appropriate.

85.     Certification of Ms. Gonzalez's claims for class-wide treatment is appropriate because Ms. Gonzalez can prove the elements of her claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

**B.      Numerosity**

86.     The members of the Nationwide Class are so numerous that joinder of all members is impractical.

87.     While the precise number of members in the Nationwide Class is only known to BCBS, it has issued and/or administered policies covering thousands of federally employed and non-federally employed patients. In addition, PBT has become so widespread that, at a minimum, requests for coverage of this treatment numbering in the thousands must have been submitted to and denied by BCBS.

88.     The Nationwide Class is ascertainable because the members can be readily identified using BCBS's claims data. PBT treatment is described with a discrete set of procedure codes under the Current Procedural Terminology ("CPT") promulgated by the American Medical Association. The Class Members can be readily and objectively ascertained through records maintained by BCBS.

89.     Finally, members of the Nationwide Class are dispersed geographically throughout the United States such that joinder of all members is impracticable.

**C.      Commonality**

90.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class members. These include, without limitation:

        a.      Whether PBT therapy is an "experimental" or "investigational" or "unproven" service or treatment;

        b.      Whether BCBS relied upon and categorically applied the PBT Guideline to deny coverage to Class Members;

19

c.    Whether BCBS categorically required Class Members to submit to an ABD process in order to obtain coverage for PBT treatment;

d.    Whether the creation, development, and/or implementation of the BCBS PBT Guideline and/or ABD process constituted a breach of BCBS's contracts with the OPM;

e.    Whether the creation, development, and/or implementation of the BCBS PBT Guideline and/or ABD process constituted a breach of BCBS's contracts (the plans) with the Class Members;

f.    Whether the creation, development, and/or implementation of the BCBS PBT Guideline constituted a violation of FEHBA;

g.    Whether the Class Members suffered damages as a result of BCBS's denial of PBT; and

h.    Whether the Class Members are entitled to the relief sought if Ms. Gonzalez establishes liability.

**D.    Typicality**

91.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Ms. Gonzalez's claims are typical of the claims of each of the Class Members, as all Class Members were and are similarly affected and their claims arise from the same wrongful conduct of BCBS. Each Class Member submitted a request and/or claim for coverage of PBT for treatment of cancer, and, like other Class Members, BCBS wrongfully denied the claim based upon the BCBS PBT Guideline. As a result, BCBS has been unjustly enriched and Ms. Gonzalez and the putative Class Members have sustained, and will continue to sustain, damages. The relief Ms. Gonzalez seeks in this action is typical of the relief sought for the absent Class Members.

**E.    Adequacy of Representation**

92.    Ms. Gonzalez will fairly and adequately protect the interests of the Nationwide Class. Her interests do not conflict with the interests of the Class Members. Further, Ms. Gonzalez has retained counsel who are competent and experienced in complex class action litigation, and Ms. Gonzalez and her counsel intend to prosecute this action vigorously on behalf

of the Class Members and have the financial resources to do so. Neither Ms. Gonzalez nor her counsel have any interest adverse to those of the Class Members.

### F.     Predominance/Superiority

93.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Questions of law and fact common to the Class Members predominate over any questions affecting only individual members.

94.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members is impracticable. Further, because the damages Class Members suffered by the denial of PBT treatment are small relative to the expense and burden of individual litigation, it would be impossible for the Class Members to individually redress the harm done to them, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

95.     Contrary to piecemeal litigation, class action litigation presents far fewer management difficulties, conserves judicial resources and the parties' resources, and more effectively protects the rights of each Class Member. The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

96.     Ms. Gonzalez is unaware of any obstacles likely to be encountered in the management of this class action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

G.     **Fed. R. Civ. Proc. 23(b)(1)**

97.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for all Defendants.

H.     **Fed. R. Civ. Proc. 23(b)(2)**

98.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because by applying a uniform policy to deny the PBT treatment and force policyholders into cheaper, suboptimal treatments, BCBS has acted and refused to act on grounds that apply generally to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class Members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole.

99.     The Court may, on motion of Ms. Gonzalez or on its own determination, certify statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

IX.     **CAUSES OF ACTION**

A.     **Count One – Claim for Injunctive Relief under FEHBA (5 U.S.C. §8901, et seq.) (Against the OPM only)**

100.     Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

101.     Ms. Gonzalez and many members of the PBT Class are insured under FEHBA and have their health care plan insured or administered by BCBS, like Ms. Gonzalez's Plan that is administered by BCBS Texas.

102.     FEHBA's civil enforcement provisions address an insured's means to challenge a carrier's denial of benefits under a FEHBA plan and to enforce the terms of the health benefits

plan.

103.    The OPM has authority to resolve disputed health insurance claims between a carrier and an enrollee or dependent.

104.    Pursuant to her rights under FEHBA, Ms. Gonzalez challenges BCBS's denial of benefits by suing the OPM under the APA.

105.    Here, BCBS violated both the contract with the OPM and its contract with Ms. Gonzalez (the Plan) by refusing and denying Ms. Gonzalez medically necessary PBT treatment. In doing so, BCBS relied upon an incomplete, outdated and fatally defective PBT Guideline, while also ignoring the following facts:

    a.    Ms. Gonzalez could only be safely treated with PBT to preserve essential bone marrow, which is critical given her compromised state due to systemic therapies;

    b.    BCBS's decision to deny the medical necessity is based on an incomplete and outdated medical policy;

    c.    The NCCN and ASTRO guidelines, considered the industry standard for treatment recommendations and included in the BCBS policy, support the use of PBT as standard of care for Ms. Gonzalez's indication and meets the inclusion criteria;

    d.    PBT will prevent acute and chronic radiation induced side effects; and

    e.    PBT is not considered experimental or investigational, and two governmental agencies and the two major United States cancer organizations disagree with BCBS's determination that PBT is experimental and investigational.

106.    In light of the above, and pursuant to the terms of FEHBA, as enforced by the OPM, Ms. Gonzalez seeks an order requiring the OPM to invoke its contractual right to direct BCBS to comply with its contractual obligations and for injunctive relief:

    a.    directing BCBS to change its outdated PBT Guideline that fails to comply with industry standards;

    b.    directing BCBS to implement a new PBT Guideline that adheres to industry standards;

c.      directing BCBS to re-adjudicate all ABD reviews of PBT requests, all pre-claim service requests for PBT, and all post-claim requests for reimbursement for PBT services; and

d.      for all such further declaratory and/or equitable relief that the Court deems appropriate.

**B.      Count Two – Breach of Contract (Ms. Gonzalez's Plan) (Against BCBS)**

107.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

108.    At all times material herein, Ms. Gonzalez's Plan was in full force and effect. The Plan is a valid, written agreement concerning the Plan's provision of health insurance for Ms. Gonzalez. The Plan was required to be written by BCBS in clear language that ordinary members could understand. The Plan also contains an implied covenant of good faith and fair dealing such that it should be interpreted in a way that will achieve the parties' expectations and limitations.

109.    Ms. Gonzalez made all insurance premiums and otherwise met all requirements under her Plan with BCBS.

110.    Ms. Gonzalez's Plan provides for the covered benefit of chemotherapy and radiation oncology for the treatment of cancer. The Plan makes no carve-outs or exclusions for PBT.

111.    Ms. Gonzalez's oncology team prescribed PBT as a medically necessary, and medically recognized, therapy to treat Ms. Gonzalez's cancer.

112.    Without justification, BCBS breached the Plan by denying medically necessary PBT for Ms. Gonzalez. BCBS denied Ms. Gonzalez's claims in order to force her to submit to suboptimal treatments and thereby save BCBS the cost of the more effective (yet more expensive) PBT treatment.

113.    As a direct and proximate result of BCBS's breach of the Plan, Ms. Gonzalez has sustained significant damages, including without limitation, the out-of-pocket amounts incurred by Ms. Gonzalez in connection with her cancer treatment, and for all past and future

24

compensatory and consequential damages resulting from the physical injuries and damages suffered by Ms. Gonzalez as a direct and proximate result of being forced to undergo IMRT, all in an amount to be proven at trial.

114.    Ms. Gonzalez also seeks pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

C.    **Count Three – Breach of Duty of Good Faith and Fair Dealing (Against BCBS)**

115.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

116.    BCBS has an affirmative common law duty of good faith and fair dealing. In Ms. Gonzalez's case, this means that BCBS was obligated to act in good faith and to deal fairly with Ms. Gonzalez in delivering on the promises made in the Plan – specifically the coverage of Ms. Gonzalez's PBT – and in handling Ms. Gonzalez's claim for coverage. BCBS had a duty to thoroughly investigate the claim, obtain all available medical information, and conduct a proper review. BCBS violated their duty and instead willfully, maliciously, and in bad faith denied Ms. Gonzalez the medically necessary PBT treatment she so desperately needed.

117.    BCBS repeatedly denied the medically necessary PBT treatment for Ms. Gonzalez without any arguable or reasonable basis in law or fact. BCBS's denials were not made due to mistake or inadvertence, but rather through conscious and willful decision making.

118.    Some examples of this conduct follow. For instance, BCBS intentionally and willfully ignored the vast amount of medically supported expert information and documents provided by Ms. Gonzalez's oncology team attesting to the medical necessity of Ms. Gonzalez's PBT treatment. Surely, BCBS knew that Ms. Gonzalez, and all of its insureds, purchased insurance under the reasonable belief that treatment covered under the Plan would indeed be covered. BCBS's conduct stomps on the security and peace of mind Ms. Gonzalez had in purchasing the very insurance coverage that she was ultimately denied.

119.    Another example of its despicable conduct stems from BCBS's intentional

25

concealment from Ms. Gonzalez and the Class that it was covering 100% of the PBT recommendations for UTS employees. At all times material herein, BCBS acted intentionally, maliciously, with gross negligence, or with reckless disregard for Ms. Gonzalez's rights by:

      a.      forcing Ms. Gonzalez to submit to an ABD process that was provided for nowhere in the 187-page Plan;

      b.      denying Ms. Gonzalez's PBT treatment despite the Plan providing coverage for same, and falsely claiming PBT is experimental, investigational and unproven;

      c.      relying upon an incomplete, outdated, and fatally defective PBT Guideline that appeared nowhere in the 187-page Plan and was inconsistent with generally accepted standards of medical practice and Plan terms;

      d.      failing to consider the extensive medical research and expert opinions submitted by MD Anderson explaining the medical necessity of Ms. Gonzalez's PBT;

      e.      failing to review and consider the most recent national guidance, including those promulgated by ASTRO and NCCN specifically stating that PBT is medically necessary for patients such as Ms. Gonzalez;

      f.      refusing to review and consider the most recent medical literature and research studies concerning PBT;

      g.      ignoring the particular circumstances of Ms. Gonzalez's condition;

      h.      refusing to communicate with, or consider the opinions of, Ms. Gonzalez's treating physicians at MD Anderson, all of whom had recommended PBT to treat Ms. Gonzalez's cancer;

      i.      ignoring the quality of life and health risks to Ms. Gonzalez in connection with other radiation oncology treatment, including without limitation, the grave risk the other types of treatment posed to Ms. Gonzalez's bone marrow, bowels, genitals and nerves, in addition to the fact other types of treatment would cause severe acute and chronic complications to her already-compromised immune system;

      j.      placing its own interests in profitability and cost-savings ahead of the

26

legitimate medically necessary healthcare needs of Ms. Gonzalez;

        k.    engaging in stonewalling tactics to force Ms. Gonzalez to accept sub-standard care when she was most ill and vulnerable;

        l.    relying upon the ABD process in denying Ms. Gonzalez any appeal rights; and

        m.    approving PBT in certain circumstances for other patients, and therefore engaging in discriminatory, arbitrary, and improper claims handling and processing.

120.    As a result of BCBS's bad faith denial of coverage, BCBS breached its duty of good faith and fair dealing, causing significant damage to Ms. Gonzalez. This damage included grave physical and emotional distress and mental anguish, and legal fees and costs in bringing this lawsuit, all in an amount to be proven at trial.

121.    BCBS's conduct in denying Ms. Gonzalez's medically necessary PBT was intentional, willful, malicious, grossly negligent, or in reckless disregard of her rights. As such, Ms. Gonzalez is also entitled to punitive damages against BCBS.

**D.    Count Four – Violations of Texas Insurance Code (§§541.001, *et seq.*) (Against BCBS)**

122.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

123.    Title Five, Subtitle C, Chapter 541 of the Texas Insurance Code ("TIC") addresses unfair methods of competition and unfair and deceptive acts or practices in the insurance industry.

124.    Section 541.001 establishes the purpose of the chapter as follows:

> *The purpose of this chapter is to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in [Texas] that are unfair    methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those practices.*

*See*, §541.001(a)-(b).

125.    Section 541.008 provides for a liberal construction and application of these

27

statutes to promote the underlying purposes of §541.001, *i.e.* to prohibit unfair methods of competition or unfair or deceptive acts or practices.

126. Here, BCBS violated §541.001, *et seq.* of the TIC in a myriad of ways, including without limitation, as follows:

a.     TIC §541.051, which provides that "it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting..: (A) the terms of the policy; or (B) the benefits or advantages promised by the policy..." TIC § 541.051(1)(A)-(B).

i.     BCBS violated this section by making multiple statements to Ms. Gonzalez misrepresenting both the terms of the Plan and the benefits or advantages promised by the Plan.

ii.     For instance, Ms. Gonzalez's Plan expressly provides for the benefits of coverage of chemotherapy and radiation oncology, yet BCBS inexplicably denied Ms. Gonzalez's medically necessary PBT treatment, stating on multiple occasions that such treatment is not covered by Ms. Gonzalez's Plan. However, PBT clearly falls within the coverage of "chemotherapy and radiation" treatment. In addition, the Plan provides no exclusion of PBT treatment. As such, the statements denying coverage for PBT made in BCBS's October 2, 2019, October 4, 2019, and November 13, 2019, denial letters constitute misrepresentations.

iii.     BCBS also misrepresented the claims process to Ms. Gonzalez. The 187-page Plan does not require that Ms. Gonzalez proceed with the ABD process for PBT before obtaining coverage. Yet, BCBS advised and required that Ms. Gonzalez submit to an ABD process prior to determination of coverage for PBT. BCBS denied PBT, then relied upon the purportedly required ABD process to preclude Ms. Gonzalez from any recourse for the denial.

iv.     In addition, BCBS made misrepresentations in the October 4, 2019, denial letter which stated that Ms. Gonzalez's denial was ***not*** subject to the disputed claims

28

process that is clearly set forth in the Plan, ***and*** that Ms. Gonzalez's OPM appeal rights did not apply. In other words, BCBS unlawfully and improperly denied Ms. Gonzalez's medically necessary PBT treatment, and then informed her that there was nothing she could do about it. Of course, an insured has appeal rights and methods of recourse following the improper and unlawful denial of benefits. Ms. Gonzalez specifically had such rights pursuant to the express terms of the Plan and FEHBA.

> v.    Confusingly, BCBS's November 13, 2019, denial letter stated that "additional appeal rights have been exhausted." This is a blatant misrepresentation as BCBS had indicated in the previous letters that Ms. Gonzalez had no such appeal rights to begin with. BCBS's misrepresentations are blatant and palpable and BCBS must be held accountable.

> b.    TIC §541.060,  which provides that "it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;…(3) failing to promptly provide a policyholder a *reasonable* explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise or settlement of a claim…[and] (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim." TIC § 541.060(a), subs. (1), (3) and (7) [emphasis added].

> i.    BCBS violated TIC §541.060(a)(1) by making numerous misrepresentations to Ms. Gonzalez concerning the coverage of her medically necessary PBT treatment, the procedure required to obtain coverage, and her appeal rights regarding the denial of the treatment.

> ii.    BCBS violated TIC §541.060(a)(1) by misrepresenting to Ms. Gonzalez that PBT is experimental, investigational, and unproven.

> iii.    BCBS also violated TIC §541.060(a)(3) by failing to promptly provide Ms. Gonzalez with a reasonable explanation for the denial ***based upon the Plan***. As

alleged, the Plan provides for coverage of chemotherapy and radiation oncology. BCBS's sole and unreasonable justification for denial was that PBT is "investigational," "experimental," or "unproven." This excuse is not only unreasonable on its face, but also not supported by the medical community. Dr. Bishop made it explicitly clear that PBT had not only been approved by the FDA for treatment of cancer since 1988, but that it was also medically necessary in Ms. Gonzalez's case in order to preserve the critical and essential bone marrow given her compromised physical condition. Dr. Bishop also established that the PBT guidelines BCBS relied upon to deny Ms. Gonzalez's PBT was incomplete and outdated, and that in fact the NCCN Guidelines and ASTRO Model Policy specifically state that PBT is medically necessary for patients such as Ms. Gonzalez with retroperitoneum liposarcoma. Dr. Bishop's expert opinion was supported by nearly 40 pages of documents included with the October 3, 2019, Appeal.

iv.    BCBS violated TIC §541.060(a)(7) by failing and refusing to pay a claim without conducting a reasonable investigation with respect to the claim. As discussed herein, Ms. Gonzalez's October 3, 2019, Appeal contained Dr. Bishop's expert opinions, among others, justifying the medically necessary and medically accepted PBT treatment of Ms. Gonzalez's cancer. Nearly 40 pages of supporting documentation were submitted with Ms. Gonzalez's October 3, 2019, Appeal. Yet *just one day later*, BCBS denied Ms. Gonzalez's appeal without reasonable justification or response to Dr. Bishop's thorough and specific contentions. Rather, BCBS simply issued a boilerplate denial on October 4, 2019, without conducting a reasonable investigation into Ms. Gonzalez's appeal.

c.    TIC §541.061, which provides that "it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;…(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact." TIC § 541.061(1)-(3).

i. The untrue statements and misrepresentations made by BCBS, as alleged in depth above, constitute a violation of this section. Specifically, BCBS made untrue statements of material fact concerning the coverage of Ms. Gonzalez's medically necessary PBT treatment, the procedure required to obtain coverage, and her appeal rights regarding the denial of the treatment.

ii. BCBS misrepresented to Ms. Gonzalez that PBT is experimental, investigational, and unproven.

iii. BCBS also failed to state any material facts that would make their misrepresentations not misleading, such as disclosing to Ms. Gonzalez that it was covering 100% of the PBT recommendations for UTS employees.

iv. Finally, any reasonably prudent person would be misled by BCBS's misrepresentations and falsely conclude that the ABD process was a necessary prerequisite to confirming coverage for PBT, that PBT was not covered under the Plan, and that they had no appeal rights or recourse concerning the denial.

127. Ms. Gonzalez has been significantly damaged as a result of BCBS's violation of the TIC, including suffering considerable emotional distress and mental anguish, and she seeks all available damages as a result, including but not limited to the remedies provided under TIC §§541.151 and 541.152 -- actual damages, plus court costs and reasonable and necessary attorney fees incurred as a proximate result of BCBS's wrongful conduct as alleged, all in an amount to be proven at trial.

128. Pursuant to TIC §§541.151 and 541.152, Ms. Gonzalez seeks an order enjoining BCBS's wrongful conduct and an order:

a. directing BCBS to change its outdated PBT Guideline that fails to comply with industry standards;

b. directing BCBS to implement a new PBT Guideline that adheres to industry standards;

c. directing BCBS to re-adjudicate all ABD reviews of PBT requests, all pre-

31

claim service requests for PBT, and all post-claim requests for reimbursement for PBT services; and

        d.     for all further declaratory and/or equitable relief that the Court deems appropriate.

129.    These consumer protection statutes are intended to protect individuals like Ms. Gonzalez, not to burden them with a fight over coverage while at the same time fighting life-threatening cancer. However, that is exactly what BCBS is doing to Ms. Gonzalez. Even worse, BCBS engaged in the above-referenced conduct knowingly, as defined in TIC § 541.002. In other words, BCBS had actual awareness of the falsity, unfairness, and deceptiveness of their acts and practices and knowingly committed the violations alleged herein. Ms. Gonzalez is entitled to an award in an amount not to exceed three times the amount of actual damages pursuant to TIC §541.152, subsection (b).

**E.      Count Five – Violations of Texas Insurance Code (§§ 542.001, et seq.) – the Unfair Claim Settlement Practices Act ("UCSPA")**

130.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

131.    The UCSPA applies to BCBS as a "life, health or accident insurance company." *See* TIC §542.002(1).

132.    The UCSPA prohibits an insurer engaging in business in Texas from engaging in an "unfair claim settlement practice." *Id*. at §542.003(a).

133.    BCBS violated the UCSPA by engaging in the following unfair claim settlement practices:

        a.     knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;

        b.     failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies; and

        c.     not attempting in good faith to effect a prompt, fair, and equitable

32

settlement of a claim submitted in which liability has become reasonably clear.

134.    Here, BCBS knowingly misrepresented to Ms. Gonzalez that (a) she had to submit to the ABD process; (b) that PBT was not covered under the Plan; (c) that PBT is experimental, investigational, and unproven; and (d) that Ms. Gonzalez had no appeal rights or recourse in light of the denial.

135.    BCBS also clearly failed to adopt and implement reasonable standards for the prompt investigation of Ms. Gonzalez's claim. Although it may be considered "prompt," BCBS's October 4, 2019, denial letter was unreasonable in response to the October 3, 2019, Appeal.

136.    BCBS has made no attempt, let alone a good faith attempt, to effect a prompt, fair and equitable settlement of Ms. Gonzalez's claim, despite it being made abundantly clear and scientifically supported that PBT was not experimental, investigational or unproven, but that it is widely accepted to treat cancers such as Ms. Gonzalez's tumor, and that BCBS was engaged in a three-year pilot program that expanded access to PBT for 100% of employees insured under the UTS health plan. BCBS knew or should have known that PBT was medically necessary in Ms. Gonzalez's case to avoid the serious and potentially deadly consequences of undergoing a different form of treatment. Instead, it chose to ignore the facts and rely upon its fatally defective guidelines as the basis for its denial of coverage.

137.    At all material times, BCBS's conduct was intentional. BCBS knowingly engaged in this conduct while knowing it had no factual basis to deny Ms. Gonzalez's claim. BCBS instead chose to ignore the factual and scientific evidence provided by Ms. Gonzalez and her doctors, take no action, and perform no reasonable investigation into Ms. Gonzalez's claim, all with the hope that Ms. Gonzalez would simply go away or would submit to a suboptimal (and cheaper) form of treatment.

138.    Ms. Gonzalez has been significantly damaged as a result of BCBS's violation of the TIC and UCSPA, including suffering considerable emotional distress and mental anguish. She thus seeks all available resulting damages, including the amount of her claim, 18% interest

on the amount of the claim, reasonable and necessary attorney fees, and prejudgment interest on the amount of the claim, as provided by law, and all reasonable attorney fees to be taxed as part of the costs in the case. *See* TIC §542.060.

     **F.**    **Count Six – Violation of the Texas Deceptive Trade Practices--Consumer Protection Act (§§17.41, *et seq.*) (Against BCBS)**

    139.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

    140.    The Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA") was enacted to protect Texas consumers from false, misleading and deceptive acts and practices. The DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty…" *See* DTPA § 17.44(a).

    141.    BCBS violated the DTPA by engaging in unconscionable conduct including, without limitation, the conduct and misrepresentations set forth in detail herein.

    142.    Specifically, BCBS knowingly made multiple representations to Ms. Gonzalez that (a) she had to submit to the ABD process; (b) that PBT was not covered under the Plan; (c) that PBT is experimental, investigational, and unproven; and (d) that Ms. Gonzalez had no appeal rights or recourse in light of the denial.

    143.    In addition, BCBS failed to conduct a reasonable investigation into Ms. Gonzalez's claim prior to rendering any of its denials.

    144.    BCBS also made no attempt, let alone a good faith attempt, to effect a prompt, fair and equitable settlement of Ms. Gonzalez's claim, despite it being made abundantly clear and scientifically supported that PBT was not experimental or investigational, but that it is widely accepted to treat cancers such as Ms. Gonzalez's tumor, and that BCBS was engaged in a three-year pilot program that expanded access to PBT for 100% of employees insured under the UTS health plan. BCBS knew or should have known that PBT was medically necessary in Ms. Gonzalez's case to avoid the serious and potentially deadly consequences of undergoing a

different form of treatment. Instead, BCBS chose to ignore the facts and rely upon its fatally defective guidelines as the basis for its denial of coverage.

145.    Stated differently, BCBS's myriad violations of the TIC are unconscionable conduct proscribed by the DTPA. BCBS's unconscionable conduct in taking advantage of Ms. Gonzalez's disparity in knowledge of, and ability, experience and capacity with, health insurance coverage and PBT standards of care, to a grossly unfair degree are additional violations of the DTPA.

146.    At all times material herein, BCBS's conduct was knowing and intentional.

147.    Ms. Gonzalez has been significantly damaged as a result of BCBS's violation of the DTPA, including suffering considerable emotional distress and mental anguish. Ms. Gonzalez seeks all available damages as a result, including but not limited to the amount of economic damages proximately caused by BCBS's wrongful conduct.

148.    Because BCBS's wrongful conduct was committed knowingly and intentionally as alleged herein, Ms. Gonzalez is entitled to recover damages for mental anguish in an amount according to proof, and an award not more than three times the amount of damages for mental anguish and economic damages. *See* DTPA §17.50.

149.    Further pursuant to DTPA § 17.50, Ms. Gonzalez seeks an order enjoining BCBS's wrongful conduct and an order:

        a.    directing BCBS to change its outdated PBT Guideline that fails to comply with industry standards;

        b.    directing BCBS to implement a new PBT Guideline that adheres to industry standards;

        c.    directing BCBS to re-adjudicate all ABD reviews of PBT requests, all pre-claim service requests for PBT, and all post-claim requests for reimbursement for PBT services; directing BCBS to restore to Ms. Gonzalez her money paid in premiums and for treatment; and

        d.    for all such further declaratory and/or equitable relief that the Court deems appropriate, including the appointment of a receiver or the revocation of BCBS's license or

certificate authorizing them to engage in the business of insurance in the State of Texas if the judgment has not been satisfied within three months of the date of the final judgment.

### G.    Count Seven – Negligent Misrepresentation

150.    Ms. Gonzalez incorporates and re-alleges the allegations in each of the preceding paragraphs as if they were here set forth in full.

151.    The elements of a negligent misrepresentation claim are: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

152.    BCBS, through the Plan, represented that PBT was covered under the Plan. This proved to be false as BCBS repeatedly denied and refused coverage for Ms. Gonzalez's PBT.

153.    BCBS also represented to Ms. Gonzalez that she had to submit to the ABD process in order to get pre-authorization for her PBT treatment. This was also false, as the 187-page Plan and PBT Guideline do not require an ABD process in connection with PBT. BCBS falsely represented that the ABD denial precludes any of Ms. Gonzalez's appeal rights.

154.    Ms. Gonzalez justifiably relied upon these misrepresentations, causing her to believe her PBT was not covered under the Plan.

155.    As a direct and proximate result of BCBS's negligent misrepresentations as described herein, Ms. Gonzalez has been damaged in an amount to be proven at trial in this matter.

## X.    DAMAGES

156.    The acts, omissions, and practices of BCBS described herein were the proximate cause of the damages sustained by Ms. Gonzalez. All of BCBS's conduct in violation of common law and the various federal and state statutes alleged herein was the producing cause of the actual damages suffered by Ms. Gonzalez, including without limitation, compensatory and

consequential damages and damages for mental anguish and emotional distress. As such, Ms. Gonzalez is entitled to monetary damages as may be found by the jury.

157.    The actions and conduct of BCBS described herein was done intentionally, knowingly, or with a conscious or callous disregard for the rights and welfare of Ms. Gonzalez. As such, BCBS's actions were so extreme and outrageous as to warrant the imposition of punitive or exemplary damages, or treble damages as specifically set forth in TIC and DTPA, which Ms. Gonzalez further seeks herein as may be assessed by the jury in its discretion.

158.    Ms. Gonzalez also requests, in addition to the damages discussed above, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code §1103.103, or on principles of equity.

159.    The Plan does not contain a rate of interest payable on the benefit amount wrongfully withheld. As such, the Court must turn to section 1103.104(c) of the TIC, and Ms. Gonzalez requests such an accounting in order to determine the amount earned on the funds that should have rightfully been paid, and in accordance with TIC §1103.104(c).

## XI.    REQUEST FOR ATTORNEYS' FEES

160.    This lawsuit was made necessary by the wrongful acts and practices of BCBS. Ms. Gonzalez, and all others similarly situated, have been forced to retain attorneys to prosecute these claims. As such, they are entitled to recover her reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this matter through trial and appeal, if any, that are reasonable and necessary to obtain the relief that they seek. Ms. Gonzalez further seeks recovery of her reasonable attorneys' fees pursuant to Section 38.001, *et seq.* of the Texas Civil Practice and Remedies Code, Sections 541 and 542 of the TIC, Section 17.49 *et seq.* of the DTPA, and any and all other applicable Texas or federal laws.

## XII.    DEMAND FOR JURY TRIAL

161.    Ms. Gonzalez demands a trial by jury on all causes of action triable before a jury.

## XIII.  PRAYER

162.    For the foregoing reasons, Ms. Gonzalez requests Defendants be cited to appear and that on final trial Ms. Gonzalez obtain a judgment against Defendants in an amount in excess of the minimum jurisdictional limits of this Court; that she be awarded judgment against Defendants for the above described damages in the full amounts allowed by law, together with statutory interest, costs and reasonable attorneys' fees incurred, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, equitable relief as above described; and all such other and further relief, both at law and in equity, to which Ms. Gonzalez may be justly entitled.

Respectfully submitted,

By:     /s/ Amar Raval
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval, LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 Fax
araval@berglummer.com

Richard T. Collins* (CA Bar No. 166577)
Damon D. Eisenbrey* (CA Bar No. 215927)
Adrian L. Canzoneri* (CA Bar No. 265168)
CALLAHAN & BLAINE, APLC
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
(714) 241-4445 Fax
rcollins@callahan-law.com
deisenbrey@callahan-law.com
acanzoneri@callahan-law.com

Attorneys for Plaintiff, Roslyn Gonzalez, individually and on behalf of all others similarly situated

*Pro Hac Vice Pending