UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSLYN GONZALEZ, *individually and on behalf of all others similarly situated,* | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2149-B |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| ASSOCIATION, HEALTH CARE | § | |
| SERVICE CORPORATION *d/b/a* | § | |
| BLUE CROSS BLUE SHIELD OF | § | |
| TEXAS, and UNITED STATES | § | |
| OFFICE OF PERSONNEL | § | |
| MANAGEMENT, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is: (1) a motion to dismiss filed by Defendants Blue Cross and Blue Shield Association and Health Care Service Corporation (collectively, "BCBS") (Doc. 28); and (2) a motion to dismiss filed by Defendant United States Office of Personnel Management ("OPM") (Doc. 31). For the reasons that follow, BCBS's motion is **GRANTED**, and Plaintiff Roslyn Gonzalez's claims asserted against BCBS are **DISMISSED WITH PREJUDICE** on the ground that they are preempted by federal law. Furthermore, OPM's motion is **GRANTED**, and Gonzalez's sole claim against OPM is **DISMISSED WITHOUT PREJUDICE** for lack of Article III standing. Finally, Gonzalez's request for leave to amend is **GRANTED**. Gonzalez's amended complaint must be filed within fourteen days of the date of this Order.

# I.

# BACKGROUND

A.    *Statutory Background*

"The Federal Employees Health Benefits Act of 1959 (FEHBA) . . . establishes a comprehensive program of health insurance for federal employees." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). It authorizes OPM "to contract with private carriers" like BCBS "to offer federal employees an array of health-care plans." *Id.* (citation omitted). FEHBA requires that OPM's contracts with carriers "contain a detailed statement of benefits offered . . . ." 5 U.S.C. § 8902(d). It further requires such contracts to "include . . . maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." *Id.*

Any FEHBA carrier must "agree to pay for or provide a health service or supply in an individual case if [OPM] finds that the [insured] . . . is entitled thereto under the . . . contract." § 8902(j). This means that OPM has the authority to direct FEHBA carriers to cover certain services. To this end, OPM has promulgated regulations that prescribe an administrative procedure for insureds to seek OPM's review of a carrier's denial of coverage. *See generally* 5 C.F.R. § 890.105. After an insured has exhausted her administrative remedies with OPM, she may "seek judicial review of OPM's final action on the denial of a health benefits claim." 5 C.F.R. § 890.107(c). Such an action "must be brought against OPM and not against the carrier or carrier's subcontractors." *Id.* And "[t]he recovery in such a suit [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.*

B.      *Factual Background*[1]

"Largest of the plans for which OPM has contracted . . . is the Blue Cross Blue Shield Service

Benefit Plan (Plan), administered by local Blue Cross Blue Shield companies." *Empire*, 547 U.S. at

682. The Plan is administered in Texas by BCBS. Doc. 1, Compl., ¶ 16. And Gonzalez, a former

federal government attorney, "was at all relevant times . . . a participant in the" Plan. *Id.* ¶ 10.

Gonzalez is in her early forties. *See id.* In the summer of 2019, Gonzalez was diagnosed with

a malignant tumor in her "left lower abdomen[.]" *Id.* ¶ 23. Gonzalez's oncologist recommended

proton beam radiation therapy ("PBT"), as opposed to traditional radiation therapy ("IMRT"), to

treat Gonzalez's cancer. *Id.* ¶¶ 24–25, 27. "PBT uses protons to deliver a curative radiation dose to

a tumor, while reducing dose exposure to healthy tissues and organs. It results in fewer complications

and side effects than traditional IMRT." *Id.* ¶ 27.

In Gonzalez's case, "PBT was [determined] medically necessary in light of her diagnosis and

the close proximity of the tumor to her spinal canal, nerves and reproductive organs." *Id.* ¶ 39.

Gonzalez's oncologist deemed PBT the only way to safely treat Gonzalez while "preserv[ing] essential

bone marrow, which [was] critical given her compromised state," and "prevent[ing] acute and

chronic radiation induced side effects." *Id.* ¶ 46 (citation omitted). Nevertheless, as further explained

below, BCBS declined to cover PBT for Gonzalez.

According to Gonzalez, PBT, which was approved by the FDA in 1988 for cancer treatment,

has been "meticulous[ly] peer-reviewed," determined safe and effective, and used relatively widely

for more than a decade. *Id.* ¶¶ 28–29. However, BCBS has an "internal" policy regarding PBT ("the

---

[1] The Court draws the following factual account from Gonzalez's complaint (Doc. 1).

PBT Guideline"). *Id.* ¶ 33. The PBT Guideline "limits the medical necessity of PBT treatment to the treatment of uveal melanomas, skull-based tumors, and pediatric central nervous system tumors." *Id.* ¶ 34 (citation omitted). The PBT Guideline deems PBT "investigational" with respect to other types of cancers, but it "makes no reference whatsoever" to Gonzalez's type of cancer. *Id.* Though the PBT Guideline is "not included in the 187 pages of" Gonzalez's Plan, *id.* ¶ 33, BCBS relied on it in declining to cover PBT for Gonzalez. *Id.* ¶ 37.

As a result of BCBS's denial of coverage for PBT, Gonzalez had "no choice" but to proceed with IMRT. *Id.* ¶ 60. Gonzalez now suffers the side effects of IMRT that her doctors feared: "nerve damage in her left leg, with periods of unremitting pain and other times with lack of sensation and strength," *id.* ¶ 61, and "the early onset of menopause" due to the tumor's proximity to her reproductive organs, which means "she will never bear children." *Id.* ¶ 62. According to Gonzalez, had she undergone PBT instead of IMRT, she would not suffer these side effects today. *See id.* ¶¶ 61–62.

C.   *Procedural Background*

A significant dispute in this case derives from the manner in which BCBS denied Gonzalez coverage for PBT. By way of background, there are some services for which BCBS requires insureds to obtain "precertification" by filing a "pre-service claim." *Id.* ¶ 18. For these services, an insured must seek approval from BCBS before treatment. *Id.* BCBS provides an appeals process for denials of precertification. *Id.* ¶ 20 (citation omitted). Importantly, precertification is not required for PBT. *Id.* ¶ 19 (citation omitted); Doc. 28, BCBS's Mot., 5; Doc. 31, OPM's Mot., 7. According to Gonzalez, however, "BCBS required [her] . . . to submit to an advance benefit determination ('ABD')" anyway. Doc. 1, Compl., ¶ 40. In other words, Gonzalez alleges that BCBS required her to

request PBT coverage pre-service, even though PBT is not subject to the precertification requirement. And Gonzalez maintains that "the 187-page Plan document has absolutely no reference to" the ABD process BCBS imposed. *Id.*

Gonzalez appealed BCBS's ABD determination internally. *Id.* ¶¶ 42–46. BCBS "[s]tubbornly [m]aintain[ed] [i]ts [d]enial" by "a one-half page letter" the following day reiterating BCBS's position that PBT is experimental. *Id.* ¶¶ 47, 50. By that same letter, BCBS informed Gonzalez that its "'advanced benefit decision is not subject to the disputed claims process' and that the OPM 'appeal rights do not apply.'" *Id.* ¶ 50 (quoting Doc. 1-5, Ex. E., 1).[2] Thus, while it appears that Gonzalez was permitted to appeal the ABD decision through BCBS, she could not appeal BCBS's final ABD decision to OPM.

Gonzalez brings a claim for injunctive relief under FEHBA against OPM. Particularly, Gonzalez seeks an order from this Court that OPM:

> direct[] BCBS to change its outdated PBT Guideline that fails to comply with industry standards; . . . direct[] BCBS to implement a new PBT Guideline that adheres to industry standards; . . . [and] direct[] BCBS to re-adjudicate all ABD reviews of PBT requests, all pre-claim service requests for PBT, and all post-claim requests for reimbursement for PBT services[.]

*Id.* ¶ 106. Moreover, Gonzalez brings the following state law claims against BCBS:

(1) breach of contract—namely, the Plan, *id.* ¶¶ 107–14;

(2) breach of the duty of good faith and fair dealing, *id.* ¶¶ 115–121;

(3) violations of the Texas Insurance Code ("TIC"), *id.* ¶¶ 122–29;

(4) violations of the Unfair Claim Settlement Practices Act ("UCSPA"), *id.* ¶¶ 130–38;

---

[2]No defendant disputes that BCBS "required" Gonzalez to submit to ABD. Doc. 28, BCBS's Mot., 6; Doc. 31, OPM's Mot., 7.

(5) violations of the Texas Deceptive Trade Practices Act ("DTPA"), *id.* ¶¶ 139–49; and (6) negligent misrepresentation, *id.* ¶¶ 150–55.[3]

The pending motions to dismiss (Docs. 28 and 31) were filed in October and November 2020, respectively. BCBS seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that Gonzalez's state-law claims against it are preempted by FEHBA and, alternatively, under Federal Rule of Civil Procedure 12(b)(1) on the ground that Gonzalez lacks Article III standing to assert her claims. Doc. 28, BCBS's Mot., 1, 8, 18. OPM seeks dismissal under Rule 12(b)(1) on the grounds that Congress has not waived sovereign immunity for the claims Gonzalez brings; Gonzalez's claims are moot or, alternatively, unripe; Gonzalez lacks standing; and Gonzalez has not properly served OPM. Doc. 31, OPM's Mot., 9–19. Alternatively, OPM seeks dismissal under Rule 12(b)(6) on the ground that Gonzalez has not stated a claim upon which relief can be granted. *Id.* at 19. Both motions are fully briefed and ripe for review.

The Court begins by assessing BCBS's motion. Because the Court agrees with BCBS that Gonzalez's state-law claims are preempted by FEHBA, the Court **GRANTS** BCBS's motion. The Court then turns to OPM's motion. Finding that Gonzalez lacks standing to bring her claim against OPM, the Court **GRANTS** OPM's motion, too.

---

[3] Gonzalez brings each of these claims on behalf of herself and a putative nationwide class of participants or beneficiaries of the Plan who were "denied pre-service or post-service claims for" PBT, "required to submit to [ABD] in connection with seeking" PBT, and "denied proper appeal rights." *Id.* ¶ 82. After the present motions to dismiss were filed, however, the Court agreed to defer setting a class-certification briefing schedule pending resolution of the motions. *See* Doc. 34, Elec. Order.

## II.

## LEGAL STANDARDS

A.      *Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute. Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). A facial challenge occurs "when a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)).

In reviewing a facial challenge, courts consider just "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). But this is a factual challenge. Gonzalez enjoys no presumption of truthfulness here. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Instead, she must "prove subject matter jurisdiction by a

preponderance of the evidence." *MacKenzie*, 2016 WL 3906084, at *2 (citing *Paterson*, 644 F.2d at 523). To that end, each party may submit affidavits, testimony, and other evidentiary materials in support of their positions. *Paterson*, 644 F.3d at 523.

**B.    Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 547 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it

-8-

has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

A.  *Gonzalez's Claims Against BCBS Are Dismissed Because They Are Preempted.*

The Court first turns to BCBS's motion. BCBS's primary argument for dismissal is that FEHBA preempts all Gonzalez's claims against it. *See* Doc. 28, BCBS's Mot., 8–18. Alternatively, BCBS argues Gonzalez lacks standing. *Id.* at 18. The Court first assesses BCBS's standing argument. Finding that it fails, the Court turns to BCBS's preemption argument. Because the Court agrees with BCBS that Gonzalez's claims against BCBS are preempted, BCBS's motion is granted on this ground.

1.  Gonzalez has standing to bring her claims against BCBS.

The judicial power of federal courts is limited by Article III of the Constitution. *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 318 (5th Cir. 2002). "[T]he Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). Article III standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560). To satisfy the prerequisites of Article III standing, a plaintiff must show that: (1) she suffered an "injury in fact" (one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) there is a "causal connection between the injury" and the challenged conduct of the defendants; and (3) the injury

will likely "be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted).

BCBS's standing argument is twofold: "To the extent [Gonzalez] seeks 'the amount of her claim' for PBT" or an order that BCBS change its PBT policy, she has no injury as she does not allege she currently needs PBT. Doc. 28, BCBS's Mot., 18. "To the extent," however, Gonzalez "seeks damages for supposed mental anguish, physical injury, or other harm" as a result of receiving IMRT, she cannot establish causation because she "opted" for IMRT. *Id.* at 18–19.

Gonzalez has alleged an injury-in-fact sufficient to establish standing. The Court has described the serious, unfortunate physical injuries Gonzalez alleges she sustained as a result of BCBS's denial of PBT treatment. *See* Doc. 1, Compl., ¶¶ 61–62. The Court finds that these injuries satisfy the first element of standing—they are actual, concrete, and particularized. That Gonzalez does not allege a pending need for PBT is irrelevant, as her claims are clearly premised on these alleged physical injuries rather than on a current or continuing need for PBT. Indeed, BCBS's argument mischaracterizes the scope of relief Gonzalez seeks against BCBS. Gonzalez's complaint seeks general money damages from BCBS, among other things. *E.g.*, *id.* ¶ 113 (seeking "out-of-pocket amounts incurred . . . in connection with [Gonzalez's] cancer treatment, and for all past and future compensatory and consequential damages resulting from the physical injuries and damages suffered"); *id.* ¶ 129 (seeking "actual damages" under the TIC); *id.* ¶ 138 (seeking "the amount of her claim" under the TIC); *id.* ¶¶ 147–48 (seeking "economic damages" and "mental anguish" damages under the DTPA). These money damages, if awarded, would redress Gonzalez's injury. Gonzalez has alleged an injury-in-fact, at least to sustain her claims for monetary damages against BCBS.

-10-

Gonzalez has also alleged causation sufficient to establish standing. BCBS relies on *Huron v. Berry*, 12 F. Supp. 3d 46, 52 (D.D.C. 2013), *aff'd*, 809 F.3d 1274 (D.C. Cir. 2016), for the proposition that a self-inflicted injury precludes a finding of standing. Doc. 28, BCBS's Mot., 19. However, *Huron* is distinguishable, and, in any event, Gonzalez's injury is not "so completely due to [her] own fault as to break the causal chain." 12 F. Supp. 3d at 52 (citations and quotation marks omitted). In *Huron*, the plaintiff required a "speech generating device[] ('SGD[]')" to communicate. *Id.* at 47. He sued OPM under the APA arguing OPM's "approval of health benefits plans for federal employees that exclude or limit coverage" for SGDs was arbitrary and capricious. *Id.* The court, however, found that the plaintiff could not establish the causation element of standing, as his injury was "self-inflicted[.]" *Id.* at 52. Importantly, in *Huron*, the plaintiff "chose to enroll and stay enrolled in a plan that specifically exclude[d] SGDs from coverage, despite having the option to select and transfer to a plan that cover[ed] SGDs." *Id.* Indeed, the plaintiff had "three opportunities" before bringing his suit to transfer to a plan that covered SGDs. *Id.* at 52–53. Thus, the plaintiff was "permitted" but not "force[d]" to forgo SGD coverage, and his injury was thus of his own making. *Id.* at 53 (citations omitted). "It ma[de] no difference" to the court that the plaintiff's "decision to forgo the[] SGD coverage options was motivated by cost considerations[.]" *Id.*

Here, BCBS does not argue that Gonzalez was afforded but refused the opportunity to select a plan that would have covered PBT. Rather, BCBS argues that Gonzalez "could have opted for PBT treatment and then challenged any denial of benefits," and "[h]er decision to forego that option" precludes standing. Doc. 28, BCBS's Mot., 19. BCBS further contends that whether Gonzalez's decision to proceed with IMRT rather than PBT was "motivated by cost considerations," is of no moment. *Id.* (citation omitted). But Gonzalez's allegations establish that, unlike the plaintiff in

-11-

*Huron*, she was without a meaningful choice in selecting a cancer treatment. As discussed above, Gonzalez submitted to ABD, which, to reiterate, was an "advance benefit *determination*." Doc. 1, Compl., ¶ 40 (emphasis added). According to Gonzalez, the denial (and subsequent affirming of the denial) of PBT coverage was a final decision by BCBS not to cover PBT. *See generally id.* ¶¶ 42–51. To require that Gonzalez elect to receive a service she knew would not be covered in order to establish standing would be unreasonable. Given that Gonzalez required radiation therapy for the treatment of her cancer, *see id.* ¶ 60, and given that Gonzalez knew she would not receive coverage for PBT, the Court finds that Gonzalez's injuries arising from IMRT were not self-inflicted. Moreover, the Court will not compare Gonzalez's case to *Huron* for two reasons: First, it is not fair to state Gonzalez's decision was cost-motivated in the same way the *Huron* plaintiff's was. Gonzalez's choice (to the extent she had one) was between having costly cancer treatment paid for or not; it was not among an array coverage plans at various rates. Second, and relatedly, the *Huron* plaintiff's options included a plan that would cover SGDs. As far as the Court can tell, Gonzalez has never been presented with a coverage plan that would include PBT. Thus, while both Gonzalez and the plaintiff in *Huron* complain about the scope of coverage, the *Huron* plaintiff had a say in that scope. Gonzalez did not. This case is a far cry from *Huron*. Accordingly, the Court is not persuaded by BCBS's arguments that Gonzalez lacks standing.

    2.    <u>Gonzalez's claims against BCBS are preempted.</u>

FEHBA provides that state law "which relate[s] to the nature, provision, or extent of coverage or benefits" is "supersede[d] and preempt[ed]" by "[t]he terms of any contract" entered under FEHBA. 5 U.S.C. § 8902(m)(1). "Section 8902(m)(1)'s text does not purport to render inoperative *any and all* state laws that in some way bear on federal employee-benefit plans." *Empire*,

547 U.S. at 698 (emphasis in original) (citation omitted). Rather, preemption occurs "only when: (1) the FEBHA contract terms at issue relate to the nature, provision, or extent of coverage benefits; and (2) the state law relate[s] to health insurance or plans." *Health Care Serv. Corp. v. Methodist Hosps. of Dall.*, 2015 WL 11120541, at *12 (N.D. Tex. Jan 28, 2015) (citation and quotation marks omitted), *aff'd*, 814 F.3d 242 (5th Cir. 2016)). BCBS presents a sweeping preemption argument without differentiating among Gonzalez's claims or conducting this two-prong analysis with respect to each. *See generally* Doc. 28, BCBS's Mot.; Doc. 45, BCBS's Reply. Nonetheless, the Court assesses each of Gonzalez's claims against BCBS under this test and finds that each claim is indeed preempted by FEHBA.

### i.     Breach of Contract

Gonzalez alleges that BCBS breached the Plan. Doc. 1, Compl., ¶¶ 107–14. In particular, Gonzalez avers that the "Plan provides for the covered benefit of chemotherapy and radiation oncology for the treatment of cancer" with "no carve-outs or exclusions for PBT." *Id.* ¶ 110. Thus, according to Gonzalez, "BCBS breached the Plan by denying" PBT. *Id.* ¶ 112.

As relevant here, BCBS argues that Gonzalez's "claims implicate numerous contractual provisions . . . includ[ing] the provisions regarding . . . the types of services that are generally covered (including radiation therapy)[.]" Doc. 28, BCBS's Mot., 10. Thus, BCBS argues, they are preempted. *See id.* Gonzalez responds that her claim arising from BCBS's alleged breach of the Plan is not preempted because BCBS went *beyond* the Plan by imposing its external PBT guideline to find PBT

experimental and in requiring Gonzalez to submit to the ABD process, which was nowhere provided for in the Plan. *See* Doc. 38, Pl.'s Resp., 7.[4]

The Court finds Gonzalez's breach-of-contract claim arising from BCBS's alleged breach of the Plan is preempted by the governing contract between OPM and BCBS. First, the contract terms at issue for this claim are found in Sections 5(a) and 6 of the Plan.[5] In particular Section 5(a) provides coverage for radiation therapy, and Section 6 excludes from coverage "[e]xperimental or investigational procedures, treatments, drugs, or devices[.]" Doc. 1-1, Pl.'s App., 69, 153. The contract provisions at issue clearly "relate" to "coverage or benefits"—they are *themselves* the coverage and benefits. *Methodist Hosps. of Dall.*, 2015 WL 11120541, at *12. The Court acknowledges that BCBS relied on the PBT Guideline in denying coverage as experimental, and Gonzalez alleges that the PBT Guideline is nowhere mentioned in the Plan. Even so, in assessing whether such a practice contravened the Plan, the Court would have to interpret the Plan, including, for example, any existing provision that discusses how BCBS deems services experimental or provides whether BCBS may review internal policies in deeming services experimental. Again, as the Plan provides for Gonzalez's coverage and benefits, her breach-of-contract claim relates to coverage and benefits.

Gonzalez's breach-of-contract claim "relate[s] to health insurance [and] plans" for the same reason. § 8902(m)(1). Determining whether BCBS breached the Plan would entail review of the

---

[4] The Court notes that Gonzalez's breach-of-contract claim does not appear to assert any misconduct related to BCBS's requirement that Gonzalez submit to ABD. Rather, this claim appears to be based solely on BCBS's denial of PBT coverage. *See generally* Doc. 1, Compl., ¶¶ 107–14.

[5] The Plan is incorporated by reference into the contract between OPM and BCBS. *See* Doc. 28-1, BCBS's App., 35.

-14-

Plan itself. Thus, Gonzalez's breach-of-contract claim is preempted by the contract between OPM and BCBS. *See Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 654 (M.D.N.C. 2004) (holding that a "claim for breach of contract" "complaining that [the insurer] breached its insurance plan when it refused to provide coverage" "clearly ar[ose] out of a dispute over denial of benefits or the nature or extent of coverage for benefits" (citation omitted)); *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 43 (D.D.C. 1996) ("A claim for breach of contract is, of course, cognizable under the FEHBA's enforcement procedures." (citation omitted)).

   *ii.*   *Breach of the Duty of Good Faith and Fair Dealing*

   Gonzalez alleges BCBS had a common-law duty of good faith and fair dealing, which required it to "thoroughly investigate" her claim for PBT, "obtain all available medical information, and conduct a proper review." Doc. 1, Compl., ¶ 116. Instead, according to Gonzalez, BCBS ignored Gonzalez's oncology team and the evidence they provided of Gonzalez's need for PBT in favor of outdated medical information; concealed from Gonzalez that it was covering PBT for state employees under a different plan; and forced Gonzalez to submit to ABD. *Id.* ¶¶ 118–19.

   As a preliminary matter, the Court does not find relevant that BCBS allegedly covered PBT for state employees under an unrelated plan. Those employees' plan is not before this Court, and it is not likely subject to FEHBA. *See id.* ¶¶ 63–64 (noting that BCBS conducts a "pilot program" to provide PBT to employees of a "state government entity"). In any event, BCBS's conduct with respect to insureds under a different plan has no bearing on whether BCBS acted in good faith with respect to Gonzalez and the Plan here. Thus, the Court will only assess whether Gonzalez's claim for breach of the duty of good faith and fair dealing is preempted insofar as it arises out of Gonzalez's

allegations that BCBS did not consider proper medical information and required her to submit to ABD.

Gonzalez argues that her claim for breach of the duty of good faith and fair dealing is not preempted "because it focuses not on whether the claim was valid or owed under the Plan, but instead on the reasonableness of the insurer's conduct in rejecting the claim . . . ." Doc. 38, Pl.'s Resp., 7. However, in *Burkey v. Government Employees Hospital Association*, the Fifth Circuit held that "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits." 983 F.2d 656, 660 (5th Cir. 1993) (citations omitted).[6] Thus, like her breach-of-contract claim, Gonzalez's claim for breach of the duty of good faith and fair dealing is preempted.

Gonzalez cites *Eidler v. Blue Cross Blue Shield United of Wisconsin*, 671 F. Supp. 1213, 1217 (E.D. Wis. 1987), and *Hanson v. Blue Cross Blue Shield of Iowa*, 953 F. Supp. 270, 275–76 (N.D. Iowa 1996), in support of her argument that this claim is not preempted. Doc. 38, Pl.'s Resp., 8. While the court in *Eidler* found that a bad-faith claim brought under Wisconsin law was not preempted by FEBHA, *see* 671 F. Supp. at 1217, *Eidler* is an out-of-circuit, district-court opinion that predates the Fifth Circuit's holding in *Burkey* that tort claims arising out of benefits-handling are preempted. And Gonzalez makes no suggestion as to why this Court should follow it over *Burkey*. *See generally* Doc.

---

[6] The Court notes that *Burkey* interpreted a former version of FEHBA's preemption provision, under which state law was preempted "to the extent that [it was] inconsistent with" contracts under FEHBA. 5 U.S.C. § 8902(m)(1) (1994). Congress deleted this phrase, however, "thus widening the reach of the preemption clause." *Methodist Hosps. of Dall.*, 2015 WL 11120541, at *12 (citation omitted). In other words, *Burkey* found the claims before it were preempted under a more stringent standard than exists today. *See id.* Thus, its preemption holdings remain applicable.

Gonzalez disputes the applicability of *Burkey*, however, arguing her claims are distinguishable from the claims brought by the insured in *Burkey*. Doc. 38, Pl.'s Resp., 11. But Gonzalez does not state why this Court should not apply the general principles set forth in *Burkey* and adopt its reasoning to the extent it is analogous.

38, Pl.'s Resp. Moreover, the *Eidler* court, considering FEHBA's former preemption provision, held that the pending bad-faith claim was not preempted by FEHBA, as it was not "inconsistent" with any contractual provision. 671 F. Supp. at 1217. But *Eidler* expressly noted that it was "clear that the contractual provisions [would] come into play in an evaluation of a Wisconsin bad faith tort claim[.]" *Id.* Thus, *Eidler* simply bolsters this Court's conclusion that the elements of preemption, under FEBHA's current preemption standard, are met here. *See Methodist Hosps. of Dall.*, 2015 WL 11120541, at *12.

Similarly, *Hanson* found a state law claim for "bad faith refusal to pay a benefit" to be outside "the scope of FEBHA's civil enforcement provisions." 953 F. Supp. at 275. Though *Hanson* post-dates *Burkey*, it also interpreted the former version of FEHBA's preemption provision. Thus, the Court does not find it persuasive. Moreover, like *Eidler*, *Hanson* is an out-of-circuit, district-court opinion that this Court is not inclined to follow. Aside from the cases Gonzalez cites, the Court can find no others in which a court held a good-faith-and-fair-dealing claim was not preempted by FEHBA. To the contrary, the weight of authority suggests good-faith-and-fair-dealing claims *are* preempted by FEHBA when they arise out of the manner in which a benefits claim is processed. *See, e.g.*, *Williams by Williams v. Blue Cross & Blue Shield of Va.*, 827 F. Supp. 1228, 1229–30 (E.D. Va. 1993); *Lieberman v. Nat'l Postal Mail Handlers Union*, 819 F. Supp. 344, 349 (S.D.N.Y. 1993); *Robinson v. Humana Grp. Health Plan*, 1996 WL 653846, at *8 (D.D.C. Nov. 5, 1996).

      iii.     *Violations of the TIC*

Gonzalez brings multiple claims against BCBS under the TIC. First, she raises § 541.051, which provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate or cause to be made, issued, or circulated

an estimate, illustration, circular, or statement misrepresenting . . . (A) the terms of the policy; [or] (B) the benefits or advantages promised by the policy . . . ." Tex. Ins. Code § 541.051(1). Gonzalez claims BCBS violated this provision by misrepresenting the terms of the Plan—namely, purportedly providing coverage for radiation yet denying her claim for PBT and misrepresenting the claims process. Doc. 1, Compl., ¶ 126(a). Second, Gonzalez invokes § 541.060, which provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> (1)    misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
> . . .
>
> (3)    failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim; [and]
> . . .
>
> (7)    refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Tex. Ins. Code § 541.060(a). Gonzalez bases her § 541.060 claim on BCBS's alleged misrepresentations about services covered and the experimental nature of PBT, failure to provide her with a reasonable explanation for the PBT denial based in the Plan, and failure to conduct a reasonable investigation before issuing such denial. Doc. 1, Compl., ¶ 126(b).

Finally, Gonzalez raises § 541.061, which provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; . . . [and] (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact[.]

-18-

Tex. Ins. Code § 541.061. Similar to her other TIC claims, Gonzalez bases this claim primarily on BCBS's alleged misrepresentations regarding the Plan's provision for radiation, the experimental nature of PBT, and the process for seeking PBT. Doc. 1, Compl., ¶ 126(c).

Gonzalez's TIC claims are preempted. First, though no party points to this provision, the master contract between OPM and BCBS governing the Plan contains rules regarding unfair advertising. *See* Doc. 28-1, BCBS's App., 19–20. These rules require BCBS to promulgate advertising, promotional, and marketing material that is "truthful and not misleading." *Id.* at 19. The same provision provides that OPM may take appropriate action against BCBS should BCBS fail to comply with the rules regarding unfair advertising. *Id.* at 20. Insofar as these are the contract terms at issue for Gonzalez's TIC claims, the terms relate to the provision of coverage and benefits. Indeed, this provision clearly polices the manner in which BCBS may advertise its benefits offerings and serves to protect insureds from being misled as to the nature of their available benefits. *See id.* (noting that the rules regarding unfair advertising act "to protect the interest of Federal Members"). Moreover, the TIC claims relate to health insurance plans. Each TIC claim Gonzalez asserts arises out of BCBS's denial of coverage for PBT on the ground that it is experimental and BCBS's requiring Gonzalez to submit to ABD. Thus, Gonzalez's TIC claims relate to coverage and benefits, as her breach-of-contract claim does, and the manner in which a claim for benefits was handled, as her good-faith-and-fair-dealing claim does. They are thus preempted. *See Menchaca v. CNA Gtp. Life Assurance Co.*, 331 F. App'x 298, 304 (5th Cir. 2009) (per curiam) (finding § 541.0602 claims preempted by the Employee Retirement Income Security Act (ERISA) "duplicat[ive] [of, or] supplement[al]" to, ERISA's civil enforcement remedy); *see also Hous. Cmty. Hosp. v. Blue Cross Blue*

*Shield of Tex., Inc.*, 2008 WL 11413538, at *2 (W.D. Tex. Mar. 10, 2008) (noting that ERISA's and FEHBA's preemption provisions are analyzed similarly).

Alternatively, Gonzalez's TIC claims are preempted on the ground that they conflict with Congress's purpose in enacting FEHBA's preemption provision. *See Methodist Hosps. of Dall.*, 2015 WL 11120541, at *13 (noting that "[t]he policy underling § 8902(m)(1) is to ensure nationwide uniformity of the administration of FEHBA benefits" (quoting *Burkey*, 983 F.2d at 660)). Were the several States' respective rules regarding misrepresentation in insurance operative in this context, differing obligations for FEHBA carriers may result. This would contravene the congressional intent behind the preemption provision. *See Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 394–95 (9th Cir. 2002) (finding claim for misrepresentation under Montana Insurance Code preempted because "[t]he application of different state standards would disrupt the nationally uniform administration of" FEHBA); *cf. Hous. Cmty. Hosp.*, 2008 WL 11413538, at *2 (finding insurance misrepresentation claims brought by third-party healthcare provider not preempted because such claim presupposed the insurer's coverage determination was correct and such claim was not "derived from the rights of *plan beneficiaries*" (emphasis added)).

      *iv.    Violations of the UCSPA*

Gonzalez invokes a provision of the UCSPA that generally prohibits an insurer from "engaging in an 'unfair claim settlement practice.'" Doc. 1, Compl., ¶ 132 (quoting Tex. Ins. Code § 542.003(a)). Gonzalez alleges BCBS violated the UCSPA when it: (1) knowingly misrepresented to her that "she had to submit to" ABD, "that PBT was not covered under the Plan," "that PBT is experimental," and that Gonzalez had no right to appeal, *id.* ¶ 134; (2) "failed to adopt and implement reasonable standards for the prompt investigation of [her] claim," *id.* ¶ 135; and

(3) "made no attempt, let alone a good faith attempt," to promptly and fairly settle Gonzalez's claim for PBT, *id.* ¶ 136.

Gonzalez's claims under UCSPA are preempted. Like the rest of her claims, these claims arise from BCBS's denial of coverage for PBT and its requiring her to submit to ABD. And as she has done with her other claims, Gonzalez argues this claim is not preempted because BCBS went "well beyond the terms of the Plan" in relying on the internal PBT guideline and requiring ABD. Doc. 38, Pl.'s Resp., 8. But as the Court has already explained, in assessing whether these practices contravened the Plan, the Court would have to interpret the Plan itself. Thus, the contract terms at issue relate to coverage and benefits, and the state law invoked relates to health insurance plans. Consequently, Gonzalez's UCSPA claims are preempted.

> ### v.   *Violations of the DTPA*

Gonzalez alleges that BCBS "violated the DTPA by engaging in unconscionable conduct including, without limitation, the conduct and misrepresentations" regarding coverage for PBT and Gonzalez's appeal rights. Doc. 1, Compl., ¶ 141. Gonzalez also alleges BCBS's failure to conduct a reasonable investigation into her claim and to attempt settlement in good faith constitute violations of the DTPA. *Id.* ¶¶ 143–44.

Gonzalez's DTPA claims are preempted for the same reason the rest of her claims are: They are grounded in BCBS's allegedly improper denial of PBT coverage and its requiring Gonzalez to submit to ABD. Gonzalez concedes in her briefing that "BCBS's same misconduct discussed [with respect to the other claims], particularly BCBS's application of its internal PBT Guideline and ABD process to deny coverage and deprive Ms. Gonzalez of her appeal rights, save [her DTPA claim] from FEHBA preemption[.]" Doc. 38, Pl.'s Resp., 8–9. But the Court has already rejected these

arguments. Thus, for the reasons discussed above, Gonzalez's DTPA claims are preempted. *See Mahajan v. Blue Cross Blue Shield Ass'n*, 2017 WL 4250514, at *11 (S.D.N.Y. Sept. 22, 2017) (finding state law claims alleging deceptive trade practices preempted by FEHBA on the grounds that they would interfere with congressional intent and purpose of FEHBA).

> vi.    *Negligent Misrepresentation*

Finally, Gonzalez brings a claim against BCBS for negligent misrepresentation. Doc. 1, Compl., ¶¶ 150–55. Gonzalez sets forth the elements of negligent misrepresentation as follows:

> (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Id.* ¶ 151. According to Gonzalez, BCBS falsely "represented that PBT was covered under the Plan" and that Gonzalez "had to submit to the ABD process in order to get pre-authorization for her PBT treatment." *Id.* ¶¶ 152–53. Gonzalez states that she justifiably relied on these representations and was damaged as a result. *Id.* ¶¶ 154–55.

Gonzalez's negligent-misrepresentation claim is a "[t]ort claim[] arising out of the manner in which a benefit claim [was] handled," and it is thus "not separable from the terms of the contract that governs benefits." *Burkey*, 983 F.2d at 660 (citations omitted). Accordingly, it is preempted under *Burkey* for the same reason that her good-faith-and-fair-dealing claim is. *See supra* Part III.A.2. Indeed, Gonzalez concedes that "[t]he same misconduct of BCBS [supporting her other claims] save[s] her negligent misrepresentation claim from [preemption.]" Doc. 38, Pl.'s Resp., 9. But the Court has already rejected Gonzalez's arguments with respect to her other claims.

In sum, all Gonzalez's state law claims against BCBS are preempted by FEHBA. These claims arise from BCBS's denial of coverage for PBT and/or requiring her to submit to ABD. To the extent the claims arise from an alleged improper denial of PBT, they implicate the Plan, which clearly relates to coverage and benefits. Moreover, such claims invoke state laws that, in this context, relate to health insurance plans. Insofar as the claims allege that it was improper for BCBS to require Gonzalez to submit to ABD, those claims likewise relate to coverage and benefits, as they dispute the "manner in which" Gonzalez's claim for benefits was handled. *Burkey*, 983 F.2d at 660 (citations omitted). Further, state tort claims that dispute the manner in which a benefits claim is handled under a plan relate to health insurance plans. *See id.* Finally, Gonzalez's state-law claims contravene Congress' purpose in enacting FEHBA's preemption provision: uniform administration of the Plan across the several States. Accordingly, Gonzalez's state-law claims against BCBS are **DISMISSED WITH PREJUDICE**.

B.    *OPM's Motion Is Granted, and Gonzalez's Claim Against OPM Is Dismissed for Lack of Standing.*

Now, the Court turns to OPM's motion. OPM raises several arguments for dismissal of Gonzalez's claims, including that Gonzalez lacks standing. Because the Court agrees with OPM that Gonzalez lacks standing to bring her asserted claim against OPM, the Court does not reach OPM's remaining arguments.

In its motion, OPM argues that Gonzalez lacks standing because she has not met the first element—actual or imminent injury-in-fact. Doc. 31, OPM's Mot., 18. According to OPM, "[b]ecause she did not receive the PBT therapy but instead received a different therapy that is covered by the plan and has not alleged a present need for PBT therapy," Gonzalez has not alleged an injury-in-fact. *Id.* Gonzalez responds that she was "forced to undergo the suboptimal and

dangerous IMRT treatment," resulting in her "no longer [being able to] bear children." Doc. 38, Pl.'s Resp., 16. "This harm," according to Gonzalez, is "distinct and palpable," and it "confer[s] standing[.]" *Id.* As noted above, it is clear from the pleadings that Gonzalez does not base her claim on a pending need for PBT treatment, but rather on the handling of her past request for PBT. *See generally* Doc. 1, Compl. Gonzalez has met the injury-in-fact element of standing to bring her claim against OPM. *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) ("Both tangible and intangible harms can satisfy the concreteness requirement, although tangible injuries—e.g., *physical harms* and monetary losses—are '*easier to recognize*.'" (emphasis added) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

In its reply, OPM raises a more colorable standing argument premised on the third element—redressability.[7] OPM argues Gonzalez lacks standing because the relief she seeks—injunctive relief requiring OPM to direct BCBS to change its PBT policy and comply with industry standards, as well as to re-adjudicate all ABD reviews of PBT requests—would not redress *Gonzalez*'s injury. Doc. 46, OPM's Reply, 6–7. Particularly, Gonzalez's contention that she was denied access to PBT and was injured as a result would not be remedied by the injunctive relief she seeks. *See id.* The Court agrees.

The redressability element of Article III standing "limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer v. Whitley*, 942 F.3d 715, 720

---

[7] The Court recognizes that it is improper for parties to raise new arguments in reply, but because Article III standing is a jurisdictional issue, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998), the Court has an obligation to assess it *sua sponte. Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017) (noting obligation to "examine jurisdiction whenever subject matter jurisdiction appears 'fairly in doubt'" (quoting *Iqbal*, 556 U.S. at 671)). Thus, had OPM not raised its redressability argument in reply, the Court would nonetheless raise it here.

(5th Cir. 2019) (citing *Steel Co.*, 523 U.S. at 103). "To have standing to sue for injunctive relief, a party must" satisfy the standing elements as set forth in *Lujan* and "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012) (citations omitted). Stated otherwise, "[b]ecause injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer*, 942 F.3d at 720 (quoting *Steel Co.*, 523 U.S. at 103).

Here, Gonzalez seeks the following relief from OPM:

[A]n order requiring the OPM to invoke its contractual right to direct BCBS to comply with its contractual obligations and for injunctive relief:
    a.    directing BCBS to change its outdated PBT Guideline that fails to comply with industry standards;
    b.    directing BCBS to implement a new PBT Guideline that adheres to industry standards; [and]
    c.    directing BCBS to re-adjudicate all ABD reviews of PBT requests, all pre-claim service requests for PBT, and all post-claim requests for reimbursement for PBT services[.]

Doc. 1, Compl., ¶ 106. Meanwhile, Gonzalez alleges that she has sustained the following injuries: "deni[al of] access to covered and medically necessary healthcare services"; physical injury in the form of "nerve damage" and "the early onset of menopause"; and "mental anguish and emotional distress[.]" *Id.* ¶¶ 61–62, 79, 156. But as noted above, Gonzalez does not premise her claims on a pending or future need for PBT. Rather, she alleges her injuries are the result of BCBS's handling of a past request for PBT and the denial of such claim. Thus, even if the Court were to afford Gonzalez the injunctive relief she seeks against OPM, Gonzalez's injuries would not be redressed. She has not alleged that she faces "continuing harm or a real and immediate threat of repeated injury in the

future, as required to seek injunctive relief." *Funeral Consumers*, 695 F.3d at 342 (citations omitted). Thus, Gonzalez fails to meet the redressability requirement of Article III standing, and the Court lacks subject-matter jurisdiction over her claim against OPM. Gonzalez's claim against OPM is **DISMISSED WITHOUT PREJUDICE** on this ground.

Because the Court finds that Gonzalez lacks standing to sustain her claim against OPM, the Court does not reach OPM's remaining arguments regarding sovereign immunity, ripeness, mootness, failure to state a claim, and improper service of process.[8]

C.     *The Court Grants Gonzalez Leave to Amend Her Pleadings.*

Gonzalez asks that, "[t]o the extent this Honorable Court is inclined to grant BCBS or OPM's motion to any degree," she be granted "leave to amend her Complaint pursuant to the Court's concerns." Doc. 38, Pl.'s Resp., 22.

Given that this is the Court's first opportunity to assess the sufficiency of Gonzalez's allegations, the Court agrees that it is appropriate to provide Gonzalez one chance to amend her complaint in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Gonzalez may amend her complaint as against BCBS to bring any remaining available claim that would not fall within FEHBA's preemption provision. Moreover, Gonzalez may amend her complaint as against OPM to seek any available relief that would redress the injury she has sustained. Any such amended complaint must be filed within **FOURTEEN (14)** days of the date of this Order.

---

[8] It appears that to the extent Gonzalez has not effected proper service on OPM, she intends to remedy that problem. *See* Doc. 47, Request for Clerk to Issue Summons; Doc. 48, Summons.

## IV.

## CONCLUSION

For the foregoing reasons, BCBS's motion to dismiss (Doc. 28) is **GRANTED**, and Gonzalez's claims against BCBS are **DISMISSED WITH PREJUDICE** on the ground that they are preempted by federal law. Furthermore, OPM's motion to dismiss (Doc. 31) is **GRANTED**, and Gonzalez's sole claim against OPM is **DISMISSED WITHOUT PREJUDICE** for lack of Article III standing. Finally, Gonzalez's request for leave to amend is **GRANTED**. Gonzalez's amended complaint must be filed within fourteen days of the date of this Order.

SO ORDERED.

SIGNED: April 26, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE