UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSLYN GONZALEZ, *individually and on behalf of all others similarly situated,* | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2149-B |
| BLUE CROSS AND BLUE SHIELD ASSOCIATION, HEALTH CARE SERVICE CORPORATION *d/b/a* BLUE CROSS BLUE SHIELD OF TEXAS, and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) a Motion to Dismiss filed by Defendants Blue Cross and Blue Shield Association and Health Care Service Corporation (collectively, "BCBS") (Doc. 59); and (2) a Motion to Dismiss filed by Defendant United States Office of Personnel Management ("OPM") (Doc. 60). For the reasons that follow, the Court **GRANTS** BCBS's Motion and **DISMISSES WITH PREJUDICE** all claims against BCBS and **GRANTS** OPM's Motion and **DISMISSES WITHOUT PREJUDICE** all claims against OPM.

## I.

## BACKGROUND

A.    *Statutory Background*

The Federal Employees Health Benefits Act of 1959 ("FEHBA") (5 U.S.C. § 8901 *et seq.*) "establishes a comprehensive program of health insurance for federal employees." *Coventry Health*

- 1 -

*Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1194 (2017). It provides OPM with "broad administrative and rulemaking authority over the program." *Id.* at 1195. FEHBA also authorizes OPM "to contract with private carriers" like BCBS "to offer federal employees an array of health-care plans." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006) (citation omitted). FEHBA requires that OPM's contracts with carriers "contain a detailed statement of benefits offered." 5 U.S.C. § 8902(d). It further requires such contracts to "include . . . maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." *Id.*

Any federal employees health benefits ("FEHB") carrier must "agree to pay for or provide a health service or supply in an individual case if [OPM] finds that the [insured] . . . is entitled thereto under the . . . contract." § 8902(j). This means that an "FEHB carrier[] must provide services that OPM finds an individual is entitled to under the terms of his or her plan." *Minto v. U.S. Off. of Pers. Mgmt.*, 765 F. App'x 779, 780 (3d Cir. 2019). To this end, OPM has promulgated regulations that prescribe an administrative procedure for insureds to seek OPM's review of a carrier's denial of coverage. *See generally* 5 C.F.R. § 890.105. After an insured has exhausted her administrative remedies with OPM, she may "seek judicial review of OPM's final action on the denial of a health benefits claim." 5 C.F.R. § 890.107(c). Such an action "must be brought against OPM and not against the carrier or carrier's subcontractors." *Id.* And "[t]he recovery in such a suit [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.*

B.     *Factual Background*[1]

---

[1] The Court draws the following factual account from Gonzalez's Amended Complaint (Doc. 53).

OPM contracted with BCBS to provide health insurance for federal employees (the "Contract"). *See* Doc. 53, Am. Compl., ¶ 18; *Empire*, 547 U.S. at 682. Roslyn Gonzalez ("Gonzalez") is a former federal employee who was "a participant in the Blue Cross and Blue Shield Service Benefit Plan ('Plan')." Doc. 53, Am. Compl., ¶ 12. The Plan required Gonzalez to use in network healthcare providers, which included the MD Anderson Cancer Center ("MD Anderson"), and to receive pre-approval for certain medical procedures "before [she] receive[d] medical care or services." *Id.* ¶¶ 19–20. One such procedure, proton beam radiation therapy ("PBT")[2], "does not require pre-approval," but intensity-modulated radiation therapy ("IMRT") does. *Id.* ¶ 21 (emphasis omitted). If BCBS denies pre-approval, the participant may appeal within six months of the denial. *Id.* ¶ 22. The participant may then appeal the denial to OPM. *Id.* ¶ 23.

In May 2019, Gonzalez "had an MRI of her pelvis, which revealed a 3.9 cm right ovarian cyst." *Id.* ¶ 25. A second MRI in July "revealed a large 7.3 x 5.3 x 4.8 cm ovoid mass in the left lower abdomen" that was later "diagnosed as an atypical lipomatous tumor of the left retroperitoneum." *Id.* A doctor at MD Anderson recommended PBT for treatment and advised BCBS of the same. *Id.* ¶ 27. Before approving the treatment, "BCBS required . . . Gonzalez and MD Anderson to submit to an advance benefit determination ('ABD')." *Id.* ¶ 44. One day after the ABD submission, BCBS denied PBT treatment as "investigational." *Id.* ¶ 45. The denial letter also stated that "BCBS's decision is not subject to the OPM appeal rights under the Disputed Claims Process." *Id.*

BCBS has "an internal document" ("PBT Guideline") that "limits the medical necessity of PBT treatment to the treatment of uveal melanomas, skull-based tumors, and pediatric central

---

[2] "PBT uses protons to deliver a curative radiation dose to a tumor, while reducing dose exposure to healthy tissues and organs." *Id.* ¶ 29. PBT delivers a "target[ed] high dose of proton beams to a tumor" that does less damage to surrounding organs and tissues "compared with the photon beams used for traditional IMRT." *Id.*

nervous system tumors." *Id.* ¶¶ 36–37. The PBT Guideline deems PBT "investigational" for treating other types of cancer, but "makes no reference whatsoever to the type of cancer Gonzalez suffers from." *Id.* ¶ 37. "BCBS relied upon the PBT Guideline to deny . . . Gonzalez her medically necessary PBT treatment." *Id.* ¶ 41.

The MD Anderson team "submitted a six-page letter along with nearly 40 pages of supporting documentation" to appeal BCBS's denial of PBT treatment. *Id.* ¶ 46. One day later, BCBS again denied Gonzalez coverage for PBT treatment. *Id.* ¶ 51. In response to an outcry over the denial on social media, BCBS reconsidered the decision but eventually issued another denial letter "uphold[ing] the previous denial [of] services as Experimental or Investigational." *Id.* ¶¶ 57–60.

Gonzalez proceeded with the IMRT treatment and "now suffers nerve damage in her left leg, with periods of unremitting pain and other times with lack of sensation and strength." *Id.* ¶¶ 65–66. Gonzalez is also "experiencing the early onset of menopause" and will likely never bear children. *Id.* ¶ 67.

Gonzalez filed the instant action against BCBS and OPM on August 13, 2020. *See* Doc. 1, Compl. Under her first claim, Gonzalez requests the Court to order OPM to require BCBS to pay the amount of benefits in dispute. *Id.* ¶¶ 100, 121–29. Under her second claim, Gonzalez seeks an injunction directing OPM to:

> direct[] BCBS to change its outdated PBT Guideline . . . ; implement a new PBT Guideline that adheres to industry standards; cease and desist . . . the ABD process so that benefit denials may be properly appealed and reviewed by OPM in accordance with FEHBA; not wrongfully draw from the FEHBF[3] amounts . . . [due to] wrongful PBT denials; re-adjudicate all . . . PBT requests, . . . and requests for reimbursement for PBT services; and restore to FEHBF those amounts that otherwise should have been paid to federal employees.

---

[3] The Federal Employees Health Benefits Fund ("FEHBF") consists of premiums paid by the Federal Government and federal employees that BCBS draws from to pay for covered procedures.

*Id.* ¶¶ 100, 130–135. Gonzalez also brings the following state-law claims: (1) breach of contract, (2) tortious interference with existing contract, (3) intentional infliction of emotional distress, (4) fraud, and (5) negligent misrepresentation.[4] *Id.* ¶¶ 101, 136–183.

Gonzalez filed her original complaint on August 13, 2020. *See* Doc. 1, Compl. The Court dismissed the original complaint on April 26, 2021, because her claims were preempted and she lacked Article III standing to sue OPM. *Gonzalez v. Blue Cross & Blue Shield Ass'n*, 2021 WL 1626492, at *13 (N.D. Tex. Apr. 26, 2021). Gonzalez filed an amended complaint on June 11, 2021. *See* Doc. 53, Am. Compl. The pending Motions to Dismiss (Docs. 59 and 60) were filed in July 2021. BCBS seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) and 9(b) on the ground that Gonzalez's state-law claims against it are preempted by FEHBA. Doc. 59, BCBS's Mot., 1, 9, 20. OPM seeks dismissal under Rule 12(b)(1) on the grounds that Congress has not waived sovereign immunity for Gonzalez's claims; her claims are moot or, alternatively, unripe; and Gonzalez lacks standing. Doc. 60, OPM's Mot., 1. Alternatively, OPM seeks dismissal under Rule 12(b)(6) on the ground that Gonzalez has not stated a claim upon which relief can be granted. *Id.* at 1–2. Both Motions are fully briefed and ripe for review.

The Court begins by assessing BCBS's Motion. Because the Court agrees with BCBS that Gonzalez's state-law claims are preempted by FEHBA, the Court **GRANTS** BCBS's Motion. The Court then turns to OPM's motion. Finding that Gonzalez lacks standing and Congress has not unequivocally waived sovereign immunity, the Court also **GRANTS** OPM's Motion.

---

[4] Gonzalez brings each of these claims on behalf of herself and a putative nationwide class of participants or beneficiaries of the Plan who were "denied pre-service or post-service claims for" PBT, "required to submit to [ABD] in connection with seeking" PBT, and "denied proper appeal rights." *Id.* ¶ 103. After BCBS and OPM filed motions to dismiss Gonzalez's original complaint, the Court agreed to defer setting a class-certification briefing schedule pending resolution of the prior motions. *See* Doc. 34, Elec. Order.

## II.

## LEGAL STANDARDS

A.      *Rule 12(b)(1) Standard*

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)). Dismissal "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998)).

B.     *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

C.     *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015,

1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying Rule 9(b) to fraud and negligent misrepresentation claims that arose out of the same set of facts but were contained in separate counts in the complaint).

## III.

## ANALYSIS

A.    *Gonzalez' Claims Against BCBS*

The Court addresses BCBS's Motion first. BCBS's first argument for dismissal is that FEHBA preempts all of Gonzalez's claims against BCBS. Doc. 59, BCBS's Mot., 9–20. Next, BCBS argues that Gonzalez did not well plead her ABD allegations, which undermines her claims. *Id.* at 20–21. BCBS then contends that the breach-of-contract claims must be dismissed because Gonzalez may not sue as a third-party beneficiary. *Id.* at 21–22. Because the Court agrees with BCBS's first argument, the Court does not address BCBS's other arguments.

1.    Gonzalez's Claims Against BCBS Are Preempted by FEHBA.

Under FEHBA, "[t]he terms of any contract . . . which relate to the nature, provision, or extent of coverage or benefits" supersede "any State or local law, or regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1); *Empire*, 547 U.S. at 683. Thus,

- 8 -

"state law . . . is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686. Yet the Supreme Court has held that "[s]ection 8902(m)(1)'s text does not purport to render inoperative *any and all* state laws that in some way bear on federal employee-benefit plans." *Id.* at 698 (emphasis in original) (citation omitted). "[P]reemption occurs under FEHBA when (1) the FEHBA contract terms at issue relate to the nature, provision, or extent of coverage or benefits, and (2) the state law relates to health insurance or plans." *Health Care Serv. Corp., v. Methodist Hosps. of Dall.*, 814 F.3d 242, 253 (5th Cir. 2016) (citations and quotation marks omitted). The phrase "relate to" "reach[es] any subject that has 'a connection with, or reference to,' the topics [FEHBA] enumerates." *Nevils*, 137 S. Ct. at 1197 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

BCBS presents a sweeping view of FEHBA through its reliance on *Hayes* from the Ninth Circuit and *Burkey* from the Fifth Circuit. *See* Doc. 59, BCBS's Mot., 11–12. BCBS argues that *Hayes* stands for the proposition "that all manner of claims by FEHBA enrollees relating to coverage or benefits are preempted by FEHBA," so Gonzalez's breach-of-contract and fraud claims are preempted. *Id.* (citing *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 926 n.1 (9th Cir. 1987)). BCBS next asserts that Gonzalez's tort claims are preempted according to the holding in *Burkey. Id.* at 11–12 (citing *Burkey v. Gov't Emps. Hosp. Ass'n*, 983 F.2d 656 (5th Cir. 1993)). The Court will now address each of Gonzalez's state law claims.

### i.     Breach of contract (No. CS1039)

Gonzalez's breach-of-contract claim alleges BCBS "impos[ed] its own internal PBT Guideline and ABD process to deprive [Gonzalez] . . . of access to PBT," a breach of Parts I and III of the Contract. Doc. 53, Am. Compl., ¶¶ 140–42. In essence, Gonzalez alleges BCBS circumvented OPM to modify the contract terms governing the Plan's advertising, marketing, and promotional materials

- 9 -

through its "internal PBT Guideline and ABD process" to improperly increase the "compensation of BCBS for . . . services provided." *Id.* Gonzalez contends that this claim "*do[es] not* relate to the nature, provision, or extent of coverage benefits" under the Plan. *Id.* ¶ 142 (emphasis in original). But instead, is a breach of Part I that resulted in modification of the terms of the Plan, misrepresentation about the scope of coverage, and denial of access to PBT and administrative remedies, Doc. 63, Resp., 18, and is a breach of Part III by "drawing down premiums from the FEHBF" while imposing the PBT Guideline and ABD process to deny coverage. *Id.* at 19.

BCBS argues that "the contractual provisions . . . *do* relate to coverage and benefits." Doc. 59, BCBS's Mot., 14 (emphasis in original). According to BCBS, because the allegation that BCBS imposed the PBT Guideline and ABD process to deny Gonzalez PBT depends on the determination of whether PBT is experimental or investigational, the claim implicates the Plan's provisions for radiation therapy coverage. *Id.* Thus, BCBS concludes that the Court's Order dismissing Gonzalez's breach-of-contract claim in her original complaint "already held that all of those provisions relate to coverage or benefits" and this claim does as well. *Id.* (citing *Gonzalez*, 2021 WL 1626492, at *6–7).

The Court will address each Part of the Contract separately beginning with Part I. First, the Court finds that Part I relates to coverage or benefits. In relevant part to Gonzalez's claim, Part I establishes the process for modifying the contract, incorporates FEHBA, requires various disclosures, and regulates how BCBS may distribute information and marketing materials. Doc. 28-1, Ex. 1, Part I; *see also* Doc. 53, Am. Compl., ¶ 18 (incorporating the document by reference). Specifically, OPM must authorize any changes to the Contract. *Id.* § 1.2(a). Further, "OPM and [BCBS] shall agree upon language setting forth the benefits, exclusions and other language of the Plan" and "any

advertising material . . . shall be truthful and not misleading." *Id.* §§ 1.13(a)–1.14(a). While the sections of Part I mentioned in the Amended Complaint do not discuss the substance of the Contract (i.e. the benefits or coverage details), Part I outlines how BCBS must inform plan participants of their coverage and benefits. *See id.* § 1.13. Thus, the contract terms in Part I "relate to" coverage and benefits under the Plan. *See Mahajan v. Blue Cross Blue Shield Ass'n*, 2017 WL 4250514, at *6 (S.D.N.Y. Sept. 22, 2017) (holding FEHBA preempted state law claims premised on "the description of the benefits and the brochures which describe the benefits"). Thus, the Court finds the first condition is satisfied.

The Court also finds the second condition is satisfied for the same reason as the first. The state-law breach-of-contract claim "relates to" the Plan. *See Nevils*, 137 S. Ct. at 1197. The Contract regulates how BCBS may communicate information about the benefits and coverage, which directly relates to the Plan. Therefore, the second condition is satisfied and Part I of the breach-of-contract claim is preempted.

As for Part III, the Court also finds this section relates to coverage or benefits. In relevant part, Part III provides the payment and accounting procedures. *See* Doc. 28-1, Ex. 1, §§ 3.1–3.2. OPM provides BCBS the subscription charges and BCBS reimburses OPM for any "outstanding obligations under the contract." *Id.* § 3.1(a)-(b). Additionally, BCBS must provide an annual accounting statement to OPM to identify unnecessary costs, or "overpayments or underpayments." *Id.* § 3.2(a). While Gonzalez argues that this provision relates to "compensation . . . for the services provided pursuant to the Contract," Doc. 53, Am. Compl., ¶ 142, the Court finds that the claim relates to the determination of coverage and benefits. *See Health Care Serv. Corp. v. Methodist Hosps. of Dall.*, 2015 WL 11120541, at *13 (N.D. Tex. Jan. 28, 2015) (finding a claim that goes through

a processing system "necessarily relates to and depends upon the health insurance plan"), *aff'd*, 814 F.3d 242 (5th Cir. 2016); *Burkey*, 983 F.2d at 660 (finding inseparable "[t]ort claims arising out of the manner in which a benefit claim is handled" from the contract terms). Under the "broad pre-emptive purpose" and "expansive" meaning of the phrase "relate to," Part III of the Contract relates to "the nature, provision, or extent of coverage or benefits." *See Nevils*, 137 S. Ct. at 1196–97.

The Court also finds that Part III relates to health insurance or plans for a similar reason. Part III details the reimbursement rates and how BCBS must report all expenses to OPM for the health insurance plan. *See* Doc. 28-1, Ex. 1, Part III. A breach of this part of the contract would require a determination of whether BCBS improperly denied benefits under the Plan as administered through the Contract. Such a determination naturally relates to health insurance or plans. Thus, the second condition is satisfied and the breach-of-contract claim premised upon Part III of the Contract is also preempted.

### ii.    Breach of contract (Gonzalez's plan)

Gonzalez's breach-of-contract claim for the Plan asserts that the Plan covered "chemotherapy and radiation oncology for the treatment of cancer" with "no carve-outs or exclusions for PBT." Doc. 53, Am. Compl., ¶ 148. Gonzalez claims that BCBS "breached the Plan by imposing a condition precedent to . . . receipt of covered benefits that is not contained in the Plan." *Id.* ¶ 151. Gonzalez summarizes her claim as one relating to the "denial of access to those FEHBA-mandated benefits and the administrative remedies by [BCBS]'s extracontractual ABD process" and not "relate[d] to the denial of PBT coverage." Doc. 63, Resp., 22.

BCBS argues that this breach-of-contract claim "is largely identical to Count Two of the original Complaint and it is preempted for the same reasons." Doc. 59, BCBS's Mot., 15. BCBS

asserts that the current claim "is still premised on the theory that PBT is covered under the Plan terms," which "implicates contractual provisions relating to coverage and benefits." *Id.*

The Court finds that FEHBA preempts Gonzalez's breach-of-contract claim under the Plan. First, the claim relates to coverage or benefits. Gonzalez's claim revolves around whether PBT was covered by the Plan because whether the ABD process resulted in denial of benefits to which Gonzalez was entitled depends on whether the Plan covered PBT therapy. If the Plan did not cover PBT therapy, then the ABD process could not result in the denial of benefits because the Plan did not cover PBT. Conversely, if the Plan did cover PBT therapy, then the ABD process could have resulted in the denial of a benefit covered by the Plan. Thus, this breach-of-contract claim is intertwined with the coverage of the Plan and satisfies the first condition for preemption.

Second, the claim relates to insurance or plans. The breach-of-contract claim is for a violation of the Plan so naturally, this condition is satisfied as the claim refers to the Plan. *See Burkey*, 983 F.2d at 660 ("Moreover, such claims 'relate to' the plan under § 8902(m)(1) as long as they have a connection with or refer to the plan . . . ."). As both conditions are satisfied, this claim is preempted by FEHBA.

### iii.    *Tortious interference with existing contract*

Gonzalez alleges that "BCBS committed a willful and intentional act of interference with [her] . . . employment contract . . . by depriving [her] of PBT and OPM review," "a benefit of her employment contract with the Federal Government." Doc. 53, Am. Compl., ¶¶ 155–56. As such, Gonzalez claims she has suffered damages in the "amount of premiums paid for the lack of benefits received." *Id.* ¶ 157.

BCBS argues that this claim is also preempted for the same reason as the breach-of-contract claims. Doc. 59, BCBS's Mot., 16. According to BCBS, this claim "depends on PBT being a covered benefit" and "a right to OPM review" for the denial of benefits, which require an analysis of the Plan's coverage and benefits provisions. *Id.*

Gonzalez relies on *Lake v. Aetna Life Ins. Co.* in her Response to BCBS's Motion to Dismiss. Doc. 63, Resp., 23. In *Lake*, the district court denied the defendant's motion to dismiss a tortious-interference claim resulting from the denial of PBT therapy because the "plan '[did] not cover experimental or investigational services except under certain circumstances." *Lake v. Aetna Life Ins. Co.*, 2021 WL 2649234, at *1, *7 (M.D. Fl. June 28, 2021). The defendant argued the claim failed "because: (1) 'Aetna, as claims administrator, was not a stranger to the transaction,' and (2) Lake 'has not pleaded a single fact to support his far-fetched theory, instead only parroting the elements of the tort.'" *Id.* at *6 (citations omitted). The crux of the motion was the defendant, a party to the contract, could not interfere in "a business relationship to which [it was] a party." *Id.* (quoting *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001)). Thus, the inquiry turned on whether the defendant exceeded a privileged or justified interference in the contract. *Id.* The court held that at the motion-to-dismiss stage, the plaintiff adequately pleaded his claim because the court "[was] not in a position to determine whether [defendant's] conduct was justified or privileged." *Id.*

While *Lake* concerned the denial of PBT therapy because the plan did not cover experimental or investigational services, that is where the similarities between these cases ends. The defendants in *Lake* did not bring a preemption argument, so the court's analysis in *Lake* of a tortious-interference claim is inapplicable here. *See id.* at *1.

The Court finds Gonzalez's claim for tortious interference with an existing contract is also preempted by FEHBA for the same reasons as the breach-of-contract claims. First, the claim relates to benefits or coverage. Gonzalez's employment contract[5] provided for healthcare benefits administered by BCBS but her disagreement with "the manner in which [her] benefit claim [was] handled [is] not separable from the terms of the contract that governs benefits." *Burkey*, 983 F.2d at 660. Thus, the claim relates to benefits or coverage and the first condition is satisfied.

Second, the claim relates to the Plan and is therefore preempted. Gonzalez does not argue the claim does not relate to insurance or plans. *See* Doc. 53, Am. Compl., ¶¶ 154–58; Doc. 63, Resp., 22–23. Because the tortious-interference claim refers to the Plan, the claim relates to a plan and is preempted under § 8902(m)(1). *See Burkey*, 983 F.2d at 660.

Finding both conditions satisfied, Gonzalez's tortious-interference claim is preempted by FEHBA.

> iv.      *Intentional infliction of emotional distress ("IIED")*

Gonzalez alleges that "BCBS's conduct in denying . . . Gonzalez's medically necessary PBT was intentional, willful, malicious, grossly negligent conduct . . . in reckless disregard of Gonzalez's rights." Doc. 53, Am. Compl., ¶ 166. The denial of PBT, Gonzalez contends, contravened the scientific authority on the experimental or investigational nature of PBT therapy and resulted in emotional distress and mental anguish. *Id.* ¶¶ 161–63, 165.

BCBS dedicates little space to arguing that Gonzalez's IIED claim is preempted. *See* Doc. 59, BCBS's Mot., 16–17. BCBS argues the IIED claim "is nearly identical to the breach of duty of good

---

[5] BCBS also argues Gonzalez fails to "allege any non-conclusory facts supporting the plausible existence of an employment contract with the government" and this court should not infer one exists since most federal employees "do not have an employment contract." Doc. 59, BCBS's Mot., 16 n.5. The Court does not address this issue because the result would be the same.

faith and fair dealing" claim from the prior Complaint and is thus preempted for the same reason. *Id.* at 16.

IIED claims under these circumstances are preempted. *See Barnes v. Humana, Inc.*, 2009 WL 1767616, at *2 (M.D. Fl. June 23, 2009) (collecting cases). The claim relates to benefits or coverage because Gonzalez's "allegations in support of her claim are inextricably connected to Defendant['s] alleged wrongful denial of benefits, which does relate to the terms of the FEHBA [P]lan." *See id.* Gonzalez specifically alleges that the denial of PBT caused her emotional distress. Doc. 53, Am. Compl., ¶¶ 165–66. Accordingly, this claim relates to benefits or coverage.

The claim also directly relates to the Plan. The Amended Complaint alleges that "BCBS was obligated to deliver on the promises made in the Plan." *Id.* ¶ 160. Thus, the claim relates to health insurance or plans and the second condition is satisfied.

As both conditions are satisfied, Gonzalez's IIED claim is preempted by FEHBA.

v.     Fraud

Gonzalez's Amended Complaint alleges that "BCBS made numerous false representations" regarding PBT therapy and the ABD process. Doc. 53, Am. Compl., ¶ 168. Gonzalez argues that BCBS misrepresented whether the Plan (1) provides for PBT treatment, (2) requires the ABD process for PBT treatment, and (3) includes an appeal process which BCBS denied to her. *Id.* ¶¶ 169–71. Gonzalez also claims that BCBS misrepresented whether an appeal process existed for her denial of PBT therapy and that PBT was experimental or investigational. *Id.* ¶¶ 172–73.

BCBS contends that this claim mirrors the Texas Insurance Code claim in the original Complaint and FEHBA preempts this fraud claim for the same reason that the Court found the Texas Insurance Code claim was preempted. *See* Doc. 59, BCBS's Mot., 17. BCBS points to a Ninth

Circuit case, *Hayes*, 819 F.2d at 925, that held FEHBA preempted a fraud claim. *Id.* (citing *Hayes*, 819 F.2d at 925). In the alternative, BCBS argues the claim is preempted for "relating to coverage and benefits." *Id.*

The Court agrees with the overwhelming number of courts finding similar fraud claims preempted by FEHBA. *E.g., Pellicano v. Blue Cross Blue Shield Ass'n*, 2012 WL 425239, at *5 (M.D. Pa. Feb. 8, 2012); *Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 654–55 (M.D. N.C. 2004); *Botsford v. Blue Cross & Blue Shield of Mont.*, 314 F.3d 390, 399 (9th Cir. 2002); *Kight v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 340 (E.D. Va. 1999); *Negron v. Patel*, 6 F. Supp. 2d 366, 370 (E.D. Pa. 1998); *Fed. Plaza Med. Assoc. v. Palermino*, 1991 WL 29201, at *8 (S.D.N.Y. 1991); *Hayes*, 819 F.2d at 926. Gonzalez fails to point to a case where a court allowed a state fraud claim to proceed in the FEHBA context. Because the fraud claim relates to the denial of benefits and coverage of PBT within the Plan, both conditions of the preemption test are satisfied. Thus, the Court finds the fraud claim is preempted.

### vi.    *Negligent misrepresentation*

Gonzalez alleges in her Amended Complaint that BCBS "represented that PBT was covered under the Plan," which was false because "BCBS repeatedly denied and refused coverage for Gonzalez's PBT." Doc. 53, Am. Compl., ¶ 179. Gonzalez further alleges that BCBS also misrepresented "that she had to submit to the ABD process" and the denial under this process precluded any right to appeal the denial. *Id.* ¶ 180.

BCBS dedicates two sentences in its Motion to Dismiss to argue that the negligent misrepresentation claim is preempted. *See* Doc. 59, BCBS's Mot., 17. BCBS argues the new negligent

misrepresentation claim "is nearly identical to the negligent misrepresentation count (Count Seven) of the original Complaint." *Id.*

Gonzalez's negligent misrepresentation claim in the Amended Complaint restates the negligent misrepresentation claim in the original Complaint except for added detail as to the damages suffered by Gonzalez. *Compare* Doc. 1, Compl., ¶¶ 150–55, *with* Doc. 53, Am. Compl., ¶¶ 177–83. The Court previously rejected this claim because it "is a '[t]ort claim[] arising out of the manner in which a benefit claim [was] handled,' and it is thus 'not separable from the terms of the contract that governs benefits.'" *Gonzalez*, 2021 WL 1626492, at *10–11 (quoting *Burkey*, 983 F.2d at 660) (citations omitted)). The additional detail of damages to Gonzalez does not remedy the shortcoming from the prior iteration of the claim. As such, the Court finds this claim is preempted for the same reason as in the prior dismissal.

B.      *Gonzalez's Claims Against OPM*

The Court now turns to OPM's Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. In her Amended Complaint, Gonzalez asserts two claims against OPM: a FEHBA benefits claim and an injunctive relief under FEHBA claim. Doc. 53, Am. Compl., ¶¶ 121–35. The Court will first address OPM's arguments for dismissal due to a lack of subject matter jurisdiction for the FEHBA benefits claim. The Court will then address OPM's argument to dismiss the claim for injunctive relief because of a lack of standing. Finding the Court lacks subject matter jurisdiction to adjudicate either claim, the Court does not address OPM's argument to dismiss the claims for a failure to state a claim.

1.      FEHBA Benefits Claim

In reviewing a facial challenge to the court's subject matter jurisdiction, courts consider just "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The United States may be sued only when the Congress unequivocally expresses an intent to waive sovereign immunity. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992). A waiver "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *Id.* at 34 (citations and quotation marks omitted). Specifically for FEHBA, "district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on this chapter." 5 U.S.C. § 8912. Section 8913 grants OPM the authority to "prescribe regulations necessary to carry out this chapter." 5 U.S.C. § 8913(a). Pursuant to this authority, OPM limits the recovery for the denial of benefits "to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

Under the first claim, Gonzalez asks for "a Court order directing OPM to require BCBS to pay the amount of benefits in dispute." *Id.* ¶ 129. OPM raises several arguments why the Court lacks jurisdiction to hear Gonzalez's claims. Doc. 60, OPM's Mot., 10–24. OPM first argues that "there is no waiver of sovereign immunity for [Gonzalez's] request for injunctive relief against OPM regarding a treatment that [Gonzalez] opted *not* to receive and thus never submitted a claim for." *Id.* at 11. According to OPM, FEHBA waives sovereign immunity for "judicial review of OPM's final action on the denial of a health benefits claim," but not for the type of relief requested by Gonzalez. *Id.* at 12. Therefore, this Court lacks the authority to grant the relief sought by Gonzalez. *Id.* OPM cites to *Bryan v. Off. of Pers. Mgmt.*, 165 F.3d 1315 (10th Cir. 1999) for this contention. *Id.* Gonzalez rebuts this contention by averring that OPM's argument mirrors the argument made by OPM and

rejected by the court in *Smith v. U.S. Off. of Pers. Mgmt.*, 80 F. Supp. 3d 575 (E.D. Pa. 2014). Doc. 63, Resp., 7. Second, Gonzalez asserts that she does not seek "a monetary judgment against OPM" but "the difference between the value of a Plan that provides . . . PBT and FEHBA-mandated administrative remedies . . . and the value of the Plan she actually received without those benefits." *Id.* at 9. Gonzalez concludes that such a claim falls within FEHBA's limited waiver of sovereign immunity. *Id.* The Court will first address the extent of the waiver of sovereign immunity and then address whether Gonzalez's claim falls within this waiver.

In *Bryan*, the plaintiff sued OPM for the full amount of benefits for her surgery, an attorney lien, and attorney fees and costs. 165 F.3d at 1318. The court held that "Congress clearly intended a limited waiver of sovereign immunity in Benefits Act disputes—courts only have jurisdiction to review final actions, after exhaustion, and only one remedy is available." *Id.* (citing 5 C.F.R. § 890.107(c)). Further, the court found the APA "governs judicial review of final [OPM] decisions." *Id.* at 1318–19. Turning to the plaintiff's claims, the court read the claims "as a request for monetary judgment against [OPM]—a remedy not contemplated by the government's waiver of sovereign immunity." *Id.* at 1319. The court upheld the district court's dismissal for lack of jurisdiction for the "payment of benefits and/or interest" and "review [OPM's]/[insurer's] treatment of the attorney's lien." *Id.* at 1320.

Turning to *Smith*, the plaintiff sued "OPM to challenge its decisions . . . to approve federal health insurance plans . . . that do not cover non-hospital residential addiction treatment facilities." 80 F. Supp. 3d at 580. OPM moved to dismiss for a lack of subject matter jurisdiction based on a lack of standing and that Congress did not waive sovereign immunity. *Id.* at 584. After finding the plaintiff had standing, the court addressed the waiver of sovereign immunity. *Id.* at 585–87. The

court found that OPM failed to show that Congress intended to preclude judicial review under FEHBA because the statute implies judicial review to enforce the non-discrimination provision and congressional intent demonstrates an "express concern for the welfare of federal employees." *Id.* at 587. Important to Gonzalez's argument, the court dismissed OPM's argument regarding the regulatory scheme for FEHBA benefit disputes—the same regulations relied on by the *Bryan* court—because OPM drafted the regulations, which "reflects OPM's choices, not necessarily a manifestation of congressional intent." *Id.* at 586.

The cases demonstrate the opposing contentions for whether a court should defer to the agency regulations to define the limits of sovereign immunity. *Compare Bryan*, 165 F.3d at 1318 (quoting § 890.107(c) and finding this limits Congress's waiver of sovereign immunity), *with Smith*, 80 F. Supp. 3d at 586 (rejecting § 890.107(c) as establishing Congress's intent to preclude judicial review). While *Smith* supports the contention that the Court should disregard OPM's regulations, the case is distinguishable from the instant case. In *Smith*, "OPM's actions . . . [were] constrained and limited by [the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008]." *Id.* at 585. Aside from the APA, Gonzalez points to no statutory constraint upon OPM's actions in this case that would open the door for judicial review. Further, the overwhelming majority, if not all, of the courts of appeal to address a claim for benefits, accepted various paragraphs of 5 C.F.R. § 890.107 as binding. *See Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 3 (1st Cir. 2014) (describing congressional delegation to OPM for the review process); *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 312–13 (3d Cir. 1994) (discussing the prior version of § 890.107 that required "[a]n action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan"); *Gates v. King*, 1997 WL 716426, at *1 (4th Cir. Nov. 18, 1997)

(unpublished table decision) (accepting § 890.107 as permitting judicial review); *Burgin v. Off. of Pers. Mgmt.*, 120 F.3d 494, 499 (4th Cir. 1997) (requiring payment to insurer as prescribed in § 890.107(c)); *Corp. Health Ins., Inc. v. Texas Dep't of Ins.*, 215 F.3d 526, 539 (5th Cir. 2000), *amended by*, 314 F.3d 784 (5th Cir. 2002) (finding provisions of a Texas Act preempted by the § 890.107 review process); *Stonitsch v. United States*, 2000 WL 1720703, at *1 (6th Cir. Nov. 8, 2000) (unpublished table decision) (requiring the full administrative record as required under § 890.107(d)(3) for a review of a § 890.107(c) denial of benefits); *Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009) (relying on § 890.107 for disposition of the case). *But see Nat'l Treasury Emps. Union v. Campbell*, 589 F.2d 669, 674 (D.C. Cir. 1978) (holding 5 U.S.C. § 8912 created a broad waiver of sovereign immunity for any action founded on FEHBA). The Court finds this authority, along with the discussion in *Bryan*, persuasive and adopts this line of reasoning to find the Court's authority constrained to "directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

Turning to whether Gonzalez's claim falls within the waiver of sovereign immunity, Gonzalez argues that she does not seek a monetary judgment, but "the difference between the value of a Plan that provides benefits of coverage for PBT and FEHBA-mandated administrative remedies, for which she paid premiums, and the value of the Plan she actually received without those benefits." Doc. 63, Resp., 9. In styling her claim, Gonzalez contends that "[s]he was denied 'the benefit' of access to a pre-service claim for PBT and . . . the FEHBA-mandated administrative remedies." *Id.* at 8. As "benefit" is not defined in § 890.101 of the regulations, Gonzalez asserts that a "benefit" under the regulations includes "[t]he benefit of peace of mind" for covered services and "the benefit of an appeal to and administrative review by OPM" for benefit denials. *Id.* Under this definition of a

"benefit," Gonzalez concludes that her claim "against OPM to exercise its authority to regulate [BCBS]'s performance" falls within the waiver of sovereign immunity. *Id.* at 9.

Gonzalez's expansive definition of benefit in her Response to OPM's Motion to Dismiss lacks merit. While 5 C.F.R. § 890.101 does not define "benefit,"[6] 5 U.S.C. § 8901 does define "health benefits plan" and 5 C.F.R. § 890.101 refers to the code provision for the definition of the phrase. *See* 5 U.S.C. § 8901(6); 5 C.F.R. § 890.101(a). A "'health benefits plan' means a group insurance policy or contract, medical or hospital service agreement, membership or subscription contract, or similar group arrangement provided by a carrier for the purpose of providing, paying for, or reimbursing expenses for health services." *Id.* The "benefits" from the plan then are the "provid[ed], pa[id] for, or reimburs[ed] expenses for health services." *See id.* Even under Gonzalez's styling of her claim, her claim is not one "for health services." She seeks the regulation of BCBS's performance by OPM. *See* Doc. 63, Resp., 9. Therefore, her request for relief falls outside the limited waiver of sovereign immunity.

Additionally, Gonzalez's strained definition of benefits appears contrived to skirt the remedy she seeks in her Complaint. Gonzalez seeks "a Court order directing OPM to require BCBS to pay the amount of benefits in dispute." Doc. 53, Am. Compl., ¶ 129. A payment for the difference in the value of two plans is a money damages claim because this would compensate Gonzalez for not receiving the benefits to which she thought she was entitled. *See Bowen v. Massachusetts*, 487 U.S. 879, 894–96 (1988) (defining "'money damages' . . . as compensatory relief"). FEHBA and the APA do not waive sovereign immunity for money damages. *Bryan*, 165 F.3d at 1319 ("[T]he government

---

[6] The Contract defines "benefits" as "[c]overed services or payment for covered services set forth in Appendix A, to which Members are entitled to the extent provided by this contract." Doc. 28-1, Ex. 1, § 1.1. Neither party argues for this definition even though Gonzalez quotes this definition in her Amended Complaint. Doc. 53, Am. Compl., ¶ 126. Under either definition, the Court reaches the same conclusion.

has not consented to monetary judgments in [FEHBA] disputes."); 5 U.S.C. § 702 (providing "relief other than money damages"). Because the Court lacks the authority to grant the remedy sought, the Court **GRANTS** OPM's Motion to Dismiss Gonzalez's first claim.

2.    Injunctive Relief Under FEHBA Claim

For the second claim, Gonzalez seeks injunctive relief directing OPM to require BCBS to "change its outdated PBT Guideline . . . ; implement a new PBT Guideline . . . ; cease and desist its requirement or offer of the ABD process . . . ; not wrongfully draw from the FEHBF . . . ; re-adjudicate all ABD review of PBT requests . . . ; restore to FEHBF those amounts that otherwise should have been paid to federal employees . . . ; and" other relief as deemed appropriate by the Court. *Id.* ¶ 135. For an injunction, Gonzalez must "satisfy the standing elements as set forth in *Lujan*[7] and 'demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.'" *Gonzalez*, 2021 WL 1626492, *12 (quoting *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012)). Gonzalez amended her original Complaint to allege that "the class . . . continue[s] to be wrongfully denied PBT and the threatened future injury to . . . Gonzalez and the class of being wrongfully denied PBT again" remains. Doc. 53, Am. Compl., ¶ 133. And, moreover, "cancer patients . . . are never absolved of the risk and anxiety of recurrence." *Id.* ¶ 134. Neither of these allegations alleviate the redressability issue from Gonzalez's original Complaint because the hypothetical recurrence of cancer and resulting need for PBT are not "continuing or threatened future injuries." *See Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).

---

[7] To demonstrate Article III standing, a plaintiff must show (1) she suffered an "injury in fact" (one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) there is a "causal connection between the injury" and the challenged conduct of the defendants; and (3) the injury will likely "be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and quotation marks omitted).

Gonzalez points to an appeal letter from a doctor and her needing to "undergo CT scans and surveillance at least every six months . . . for 10 years" as evidence that her harm is "real" and "concrete," not hypothetical. Doc. 53, Am. Compl., ¶ 134. But, undergoing a scan to monitor for the possibility of a recurrence of cancer does not establish "a real and immediate threat of repeated injury in the future." *See Funeral Consumers*, 695 F.3d at 342. While Gonzalez alleges a "reasonable probability of cancer recurrence," Doc. 53, Am. Compl., ¶ 134, such a probability lacks the immediacy and definiteness required for this Court to issue an injunction. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III."). For Gonzalez's injury to materialize, a series of independent—truly terrible and unfortunate—events would need to occur: contracting cancer or cancer reoccurring, this cancer existing in a place on the body not approved for PBT by her insurer, and then being declined for PBT treatment. *Cf. Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 893 (3d Cir. 2020) (listing seven separate events necessary for the threatened harm to occur). Notwithstanding the gravity of these events, this hypothetical line of reasoning demonstrates the lack of "real and immediate threat of repeated injury in the future." *Funeral Consumers*, 695 F.3d at 342. Further, the fact that Gonzalez would not suffer the same injury if the Court issued the requested injunction cannot establish standing because this "is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past." *Stringer*, 942 F.3d at 721. Thus, the Court finds Gonzalez failed to satisfy the redressability issue identified in the Court's prior Memorandum Opinion and Order. While "the law does not afford [Gonzalez] a remedy from this court at this time," the Court acknowledges the harm suffered by Gonzalez in the past. Stringer, 942 F.3d at 726 (Ho, J., concurring).

C.    *The Court Denies Gonzalez Leave to Amend Her Pleadings*

Gonzalez "requests leave to amend her [Amended Complaint]." Doc. 63, Resp., 25. Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995). In this case, the Court previously "provide[d] Gonzalez one chance to amend her complaint." *Gonzalez*, 2021 WL 1626492, at *12–13. The Court finds that allowing further amendment would be futile. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted.

## IV.

## CONCLUSION

For the foregoing reasons, BCBS's Motion to Dismiss (Doc. 59) is **GRANTED**, and Gonzalez's claims against BCBS are **DISMISSED WITH PREJUDICE** on the ground that they are preempted by federal law. Furthermore, OPM's Motion to Dismiss (Doc. 60) is **GRANTED**, and Gonzalez's claims against OPM are **DISMISSED WITHOUT PREJUDICE**. Finally, Gonzalez's request for leave to amend is **DENIED**.

SO ORDERED.

SIGNED: December 13, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 26 -